39845. STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY v. BATES et al.

DECIDED FEBRUARY 18, 1963—
REHEARING DENIED MARCH 5, 1963.

*Divine & Busbee, W. T. Divine, Jr.,* for plaintiff in error.
*Smith, Gardner, Kelley & Wiggins, Burt & Burt, H. P. Burt,* contra.

EBERHARDT, Judge. State Farm brought a declaratory judgment action against its insured, joining as a defendant the plaintiff in a damage suit against the insured. The action sought a declaration of non-liability to the insured under the "drive other cars" policy provision reading as follows:

"Insuring agreement II—Non-owned automobiles. Such insurance as is afforded by this policy . . . with respect to the owned automobile applies to the use of a non-owned auto-

mobile by the named insured or a relative, and any other person or organization legally responsible for the use by the named insured or relative of an automobile not owned or hired by such other person or organization.

*"Insuring agreement II does not apply:* (1) to a non-owned automobile (a) registered in the name of the above insured or a relative, (b) hired by or furnished to the named insured or a relative for regular use, or (c) while used in the business or occupation of such named insured or relative except a private passenger automobile operated or occupied by such named insured, relative, or by his private chauffeur or domestic servant; . . ."

The exclusion sought to be invoked was that applying to a "non-owned automobile . . . (b) . . . furnished to the named insured or a relative for regular use. . ." The insured was an Air Force sergeant at Turner Air Base in Albany, Georgia. He tested and calibrated various equipment at Turner and on occasions took equipment to Warner Robins Air Base, a distance of approximately 100 miles away for testing and calibration. When going to Warner Robins, he drew a car from the air base motor pool. The insured began making the trips in October, 1960, and the accident on which the damage suit is predicated happened April 3, 1961. While he made the trips several times a month and had a G. I. driver's license, he did not always drive the vehicle and did not always get the same car from the motor pool. The specific car driven on the day of the accident had only been used by him one time before. The insured testified that he made the trip to Warner Robins between ten and eighteen times, counting the last one.

The jury found for the defendants and State Farm moved for a judgment notwithstanding the verdict and a new trial on the general grounds. Both motions were denied and exception taken.

State Farm urges in its exhaustive brief that the undisputed facts of the case show that insured was not covered as a matter of law at the time of the accident because of the exclusionary clause quoted above. There are apparently no Georgia cases interpreting this "drive other cars" clause and no great number elsewhere. None of the foreign cases presents a factual situation

on all fours with the instant case. State Farm's primary reliance is on two cases denying coverage, viz., Farm Bureau &c. Ins. Co. v. Marr, 128 FSupp. 67 (N.J.) and Voelker v. Travelers Indem. Co., 260 F2d 275 (7th Cir.). In Marr, the insured was agent in charge of the Philadelphia Customs office. Four government cars were assigned to the office and could be used by the office at any time. The insured had driven the motor pool cars about fifty times between January 1 and October 24, the date of the accident. Voelker was a sergeant in the Illinois National Guard and was driving a Guard truck at the time of the accident. He was making the three day return trip in a Guard convoy from a two week summer camp when the collision occurred. Also supporting this view is the recent case of O'Brien v. Halifax Ins. Co., 141 S2d 307 (Fla. Dist. Ct. App.), in which the insured was a city policeman and used whichever of the city's four patrol cars was assigned to him.

We think the facts here do not come within the authority of these two cases, even if they were binding. On the other hand, a number of cases imposing liability on the insurance company also fall short of encompassing the facts sub judice. See e.g., as not constituting "regular use," Travelers Indem. Co. v. Pray, 204 F2d 821 (6th Cir.) (Insured operating father's car with permission) criticized in 18 La. L. R. 206; Factory Mut. &c. Co. v. Continental Cas. Co., 267 F2d 818 (5th Cir.) (Insured hired car for three weeks); Comunale v. Traders &c. Ins. Co., 116 Cal. App. 198 (253 P2d 495) (Insured hired brother's truck for ten days); Miller v. Farmers Mut. &c. Co., 179 Kan. 50 (292 P2d 711) (Insured driving vehicle from Kansas Adjutant General's motor pool which he had driven "four or five times" over a period in excess of one year). Cases are collected in Annot. 173 ALR 901; 6 Blashfield, Cyclopedia of Automobile Law and Practice 652, § 3962 (1945, Supp. 1962); 7 Appleman, Insurance Law and Practice, 495, § 4455 (1962); 5A Am. Jur. 86, Automobile Insurance, § 88.

We view the case authority as being of little specific assistance although general principles of law may be gleaned therefrom. One is the idea that "regular use" suggests a principal use as distinguished from a casual or incidental use. 7 Appleman, *Id.*

at 496, n. 80; 36A Words & Phrases 301 (Perm. Ed.). Furthermore, the word "furnished" must be considered as an operative part of the exclusionary clause and should be read in connection with "regular use."[1]  See Pacific Auto. Ins. Co. v. Lewis, 56 Cal. App. 2d 597 (132 P2d 846, 848). In this latter connection, the trial court in the charge apparently agreed with State Farm's contention that it was not necessary to show that the insured used the same vehicle from the motor pool on each occasion, all being "furnished" for his use.[2]

Thus the question is whether the facts outlined above come within the exclusionary clause of the policy. While the construction of contracts is for the court, as we have said in another case involving an insurance contract ". . . there is no ambiguity in the phrase 'regular or frequent trips' nor was there any evidence introduced in the case by either side showing a conflict as to the meaning placed on this phrase by the parties to the contract. It is true that it was a jury question as to what particular facts, or more specifically, as to how many trips and with what frequency they would have to be made, would constitute a violation of this warranty such as would work a forfeiture of the contract, and that question should have been submitted to the jury by the trial judge under appropriate instructions." *California Ins. Co. v. Blumberg,* 101 Ga. App. 587, 592 (115 SE2d 266). Similarly here the question of the application of the facts to the exclusion was properly submitted to the jury even if there be no ambiguity.

The question being one which the jury was authorized to

---

[1] It is conceivable that a situation might arise where the first *actual* use of a vehicle might be within the clause where the vehicle had been "furnished" for some time. See Farm Bureau &c. Ins. Co. v. Boecher, 37 Ohio L. Abs. 553 (48 NE2d 895) (automobile salesman with access to any of his employer's cars but driving the particular car for the first time) ; Century Indem. Co. v. United States Cas. Co., 306 F2d 956 (5th Cir.). Most of the cases, however, seem to depend primarily on the actual "regular use."

[2] The insured makes no assignment of error on this charge by way of cross-bill of exceptions so no ruling is here made nor is any opinion expressed.

resolve, there was no error in overruling both the motion for new trial and the motion for judgment n.o.v.

*Judgment affirmed. Felton, C. J., and Russell, J., concur.*

FELTON, Chief Judge, concurring specially. We are dealing here with an exception to a provision in the insurance policy which exception excludes coverage. The exception is ambiguous and for that reason is construed against the insurance company as well as the reason that the company wrote the policy. The words "furnished" and "regular" were used. It must be assumed that both were used for the purpose of expressing the intention of the draftsmen. If the vehicle was merely "furnished" for the regular use of the insured and he never used it more than once the insurance company obviously would escape a risk never reasonably intended. If the vehicle was not furnished for regular use but was used regularly by the insured, under the provision of exclusion, there would be coverage as to the regular use under the policy terms. The provision should be interpreted to mean that to exclude coverage there must have been the furnishing for regular use and also regular use.

(1) The vehicle (meaning any one in the pool and not one specific vehicle) was not furnished to the insured for regular use, assuming but not conceding that it was furnished for regular use to anybody. It was furnished to the insured's army unit and not specifically to him and whether the insured operated the vehicle was due to uncertain and unpredictable circumstances, so if it could be said to have been furnished to him as a person, the purpose of such furnishing would not be regular under the meaning of the word "regular" in the present context, which is, according to the 1961 (2d) Edition of Webster's New Unabridged Dictionary: "Formed, built, arranged, etc., according to some established rule, law, principle or type; . . . Steady or uniform in course, practice or occurrence; not subject to unexplained or irrational variation; returning or recurring at stated or fixed times or uniform intervals; as, a regular pulse, steadily pursued; usually or generally received, used, etc., orderly; methodical; . . . Constituted, selected, conducted, made, etc., in conformity with established or prescribed usages, rules, or discipline; . . . " As the furnishing to the insured was not

for "regular" operation, the use of the vehicle during the policy period was not regular. For a part of the time it might have been *frequent* but that is not what the policy states. According to the definition of "regular" the use was not "regular" during the period the insured used it. In the Marr case, supra, the vehicles were furnished for the individual officers. The court construed the word "regular" as meaning more than occasional. I have not seen such a definition. If the insurance company had meant "more than occasional" it could have said so.

Ordinarily I would not split hairs, as it were, as to the reason for affirming the judgment because the verdict rendered was authorized. However, under the circumstances I think that in order to avoid a misunderstanding of our ruling, or at least my view of it, we should hold that the verdict was demanded that there was coverage. Where a writing is ambiguous and no evidence throws light on the meaning, the construction is a question of law for the court. That is the situation in this case and since the contract under the undisputed facts (there being no significant dispute about them) shows coverage, the finding of coverage was demanded by the evidence. If there had been questions of the credibility of witnesses which might have resulted in a finding of facts which showed no coverage then, of course, there would have been a jury question. There was a situation similar to that just stated in *California Ins. Co. v. Blumberg*, 101 Ga. App. 587, supra, which made a jury question.

I concur in the judgment because as a matter of law the finding of coverage was demanded under the evidence.