HELEN DEVINE v. THE AETNA CASUALTY & SURETY COMPANY

No. 7228SC712

(Filed 22 August 1973)

1. Insurance § 85— automobile liability policy — owned vehicle — no coverage

Where insured purchased and took possession of an automobile on 25 September 1967, the vehicle, driven by insured, was involved in a collision with plaintiff on 22 October 1967, and title was not transferred to insured until 31 October 1967, the vehicle was not an "owned automobile" within the meaning of the insurance policy issued by defendant since the vehicle (1) was not an automobile described in the policy for which a specific premium charge indicated that coverage was afforded, (2) it was not a trailer, a temporary substitute vehicle, or a replacement vehicle, and (3) there was no showing that defendant insured all private passenger, farm and utility automobiles owned by insured on the date he acquired ownership of the vehicle in question.

2. Insurance § 85— non-owned vehicle — regular use by insured — no liability coverage

Trial court's finding that insured had had continuous possession of the vehicle in question from the date of purchase until it was repossessed sometime after the accident upon which this suit was based fully supported the conclusion that the vehicle was furnished for insured's "regular use" and that it did not come within the policy definition of a "non-owned" automobile for which liability insurance coverage was provided.

APPEAL by plaintiff from *Thornburg, Judge,* 12 June 1972 Session of Superior Court held in BUNCOMBE County.

Civil action to recover on a policy of automobile liability insurance. The parties stipulated to certain facts, waived jury trial, and submitted the case to the trial judge to find facts,

make conclusions of law, and enter judgment. In summary, facts found by the trial judge or admitted by the parties are as follows:

The defendant, The Aetna Casualty and Surety Company (Aetna), is a corporation engaged in the business of writing and selling policies of liability insurance. It has its principal place of business in Connecticut and is authorized to do business in New Jersey. On 6 November 1966 Aetna sold and delivered in New Jersey to Elmer and Selma C. Phillips, residents of New Jersey, its family automobile liability insurance policy No. 26FA11312PC, a copy of which is attached as an exhibit to the trial court's judgment. This policy, among other things, obligated Aetna to pay on behalf of the insured all sums, up to specified limits, which the insured should become legally obligated to pay as damages because of bodily injury arising out of the ownership, maintenance or use of "the owned automobile or any non-owned automobile." The words "owned automobile" and "non-owned automobile" are defined in the policy, and the policy specifically described two owned automobiles, a 1961 Chevrolet station wagon and a 1957 Chevrolet ½ ton pickup. The policy also provided comprehensive and collision insurance on the station wagon. The policy was written for the policy period 6 November 1966 to 6 November 1967, and was in full force and effect on 22 October 1967, the date of the collision hereinafter referred to.

On 25 September 1967 Elmer Phillips went to Peoples Pontiac in Clayton, New Jersey, where he entered into an agreement to purchase a 1964 Cadillac sedan, and on the same date he executed an automobile installment note in the amount of $3,050.28 to the First National Bank of Glassboro, New Jersey (the Bank), and signed a motor vehicle security agreement to the Bank describing the 1964 Cadillac as security for said loan. Also on 25 September 1967 Phillips, with consent of Peoples Pontiac, took possession of the 1964 Cadillac with dealer's tags on it, but title to the vehicle was not transferred at that time. Prior to 21 October 1967 Elmer Phillips called Peoples Pontiac for registration, which they did not have, but they advised him that the car was insured and that it was all right for him to go on a business trip in the South. On 22 October 1967 Phillips, as operator of the 1964 Cadillac sedan, was involved in a collision with another car on Interstate 40 in Haywood County, North Carolina, in which collision Helen Devine, plaintiff in the

present action, was injured. On 31 October 1967 legal title to the 1964 Cadillac was transferred to Phillips as indicated by the records of the Division of Motor Vehicles of the State of New Jersey.

On 15 July 1969 plaintiff in the present action instituted suit in the Superior Court of Buncombe County, N. C., against Elmer Phillips and Peoples Pontiac Agency, alleging damages from injuries which resulted from the collision which occurred on 22 October 1967 between the car driven by her and the 1964 Cadillac driven by Elmer Phillips and owned by Peoples Pontiac, and alleging that Phillips was the agent of Peoples Pontiac. On 23 October 1969 judgment by default and inquiry was taken against both defendants in that action, but on 10 March 1970 plaintiff took a voluntary dismissal against Peoples Pontiac. On 11 March 1970 judgment was entered in plaintiff's favor against Elmer Phillips for the sum of $20,000.00. Execution on this judgment was returned unsatisfied and this judgment has not been paid.

In the meantime, and on 25 January 1968, the 1964 Cadillac was sold at public auction (presumably as result of foreclosure of the Bank's security interest, though there is no express finding to such effect), and on 29 May 1968 the Bank instituted suit against Elmer Phillips in the Superior Court of New Jersey to recover $2,650.06 deficiency on its automobile installment note and motor vehicle security agreement. Elmer Phillips filed answer in that proceeding and filed third-party complaint against The Travelers Indemnity Company (Travelers), alleging that Travelers had issued to Peoples Pontiac a collision insurance policy on automobiles owned by it, and against Aetna, the defendant in the present action, alleging collision insurance coverage under Aetna's Policy No. 26FA11312. In his third-party complaint Phillips alleged that on 25 September 1967 Peoples Pontiac sold him the 1964 Cadillac and that he took possession of the car, although it was still titled in the name of Peoples and carried the license tag of Peoples; that the 1964 Cadillac was misrepresented and defective and "upon discovery of the misrepresentation and defective nature of the automobile Phillips rescinded the sale which in fact had not been completed since title had not been transferred"; and that "Peoples refused to accept the return of the car or the rescission of the sale." As to Aetna, Phillips alleged in his third-party complaint that "[o]n all dates hereinabove mentioned Phillips was the holder of an automobile insurance policy No. 26FA11312 with the

---

Devine v. Casualty & Surety Co.

---

Aetna Casualty and Surety Company, hereinafter called 'Aetna' which policy provided for collision coverage of both owned and non-owned automobiles." In his third-party complaint Phillips alleged that either Aetna or Travelers was responsible for any deficiency found due to the First National Bank of Glassboro. In the New Jersey court Aetna moved for summary judgment on the grounds that there existed no issue of material fact and that it was entitled to judgment as a matter of law in Phillips' third-party action against it, supporting this motion by its request for admission that on 22 October 1967 the 1964 Cadillac was legally titled in the name of Peoples Pontiac as reflected by the records of the Director of Motor Vehicles of the State of New Jersey, the admission of Phillips' attorney not denying this, and the non-negotiable Bill of Sale of the State of New Jersey covering the 1964 Cadillac dated 31 October 1967. This motion was allowed, the New Jersey court adjudging that Aetna was entitled to judgment as a matter of law.

In the present action the trial judge also found as facts that the liability policy issued by Aetna to Phillips was renewed effective 6 November 1967 to 6 November 1968 with the same coverage to the same two vehicles insured in 1966, that there was no evidence that on 22 October 1967 (the date of the collision) the 1964 Cadillac replaced a described vehicle in the policy or was being used as a substitute for a described vehicle which was withdrawn from normal use because of breakdown, repairing, servicing, loss or destruction, and that there was no evidence that on the date of the collision the 1964 Cadillac "was not furnished for his (Phillips') regular use but to the contrary that he had had continuous possession for his regular use with no restrictions from September 25, 1967, until it was repossessed by the First National Bank of Glassboro."

Upon the findings of fact the court concluded as a matter of law that Aetna did not afford liability insurance coverage to Elmer Phillips in the operation of the 1964 Cadillac on 22 October 1967, and entered judgment dismissing plaintiff's action. Plaintiff appealed.

*Joseph C. Reynolds for plaintiff appellant.*

*Roberts & Cogburn by Landon Roberts for defendant appellee.*

PARKER, Judge.

By stipulation of the parties jury trial was waived and the trial court made findings of fact, to which no exceptions were noted. Indeed, the record on appeal as docketed in this Court contains no exceptions whatever. For this reason questions argued in appellant's brief concerning admissibility of evidence and concerning sufficiency of the evidence to support certain of the trial court's findings of fact are not properly before us for review. "An assignment of error will not present a question unless it is based upon an exception set out in the case on appeal and numbered as required by Rule 21. Exceptions which appear for the first time in the assignments of error will not be considered." *City of Kings Mountain v. Cline,* 281 N.C. 269, 188 S.E. 2d 284. Plaintiff's appeal, however, is itself an exception to the judgment and to any matter appearing on the face of the record proper and presents for review the question whether error of law appears on the face of the record. *Stancil v. Stancil,* 255 N.C. 507, 121 S.E. 2d 882. This includes the question whether the facts found or admitted support the trial court's conclusions of law and the judgment entered pursuant thereto. 1 Strong, N. C. Index 2d, Appeal and Error, § 26. We hold that they do.

Aetna's liability to plaintiff, if any exists, must be found in the terms of its insurance policy issued to Phillips. By this policy Aetna agreed to pay on behalf of Phillips all sums, up to the policy limits, which he should become legally obligated to pay as damages because of bodily injury sustained by any person "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile." The words "owned automobile" and "non-owned automobile" are defined in the policy, and the question presented by this appeal becomes whether, under the facts found or admitted, the Cadillac driven by Phillips on 22 October 1967, the date on which the collision occurred which caused plaintiff's injuries, was on that date within the policy definition either of an "owned automobile" or a "non-owned automobile." We first examine whether the Cadillac can properly be considered an "owned automobile" as that term is defined in the policy. Under the heading "Definitions," the policy provided:

" *'owned automobile'* means

"(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

"(b)  a trailer owned by the named Insured,

"(c)  a private passenger, farm or utility automobile owner-ship of which is acquired by the named Insured during the policy period, provided

> "(1)  it replaces an owned automobile as defined in (a) above, or

> "(2)  the Company insures all private passenger, farm and utility automobiles owned by the named Insured on the date of such acquisition and the named Insured notifies the Company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the Company applicable to such automobile, or

"(d) ˙a temporary substitute automobile;"

[1]   Clearly, the Cadillac cannot be considered an "owned auto-mobile" within the definitions contained in subparagraphs (a) and (b) above; it was not an automobile described in the policy for which a specific premium charge indicated that coverage was afforded nor was it a trailer. Further, the evidence pre-sented in this case was not sufficient to support a finding that the Cadillac was "a temporary substitute automobile" so as to bring it within the definition of an "owned automobile" under subparagraph (d) above. The policy expressly defines the words "temporary substitute automobile" as follows:

> " *'temporary substitute automobile'* means any automobile or trailer, not owned by the named Insured, while tem-porarily used with the permission of the owner as a sub-stitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

The burden was on the plaintiff in this case to present evidence sufficient to show coverage of the Cadillac under defendant's policy, 19 Couch on Insurance 2d, § 79:351, and the trial judge expressly found that there was "no evidence that the 1964 Cadillac automobile being driven by Elmer Phillips on October 22, 1967, was being used as a substitute for a described vehicle which was withdrawn from normal use because of break-down, repairing, servicing, loss or destruction." There remains only the definition contained in subparagraph (c) above, which we now examine.

Appellant contends that Phillips acquired ownership of the Cadillac on 25 September 1967, the date he paid Peoples Pontiac and took possession of the car. Phillips, however, did not obtain legal title to the Cadillac until 31 October 1967, nine days after the accident. Under New Jersey law, which is here controlling, there must be strict compliance with the statutory requirements regarding transfer of title before title to a vehicle can be said to be transferred for insurance purposes. *Eggerding v. Bicknell,* 20 N.J. 106, 118 A. 2d 820; *Velkers v. Glens Falls Insurance Co.,* 93 N.J. Super. 501, 226 A. 2d 448. This is so even though payment of the purchase price precedes transfer of legal title. *Eggerding v. Bicknell, supra.* If it be conceded that subparagraph (c) requires only that ownership be acquired by the insured "during the policy period" and makes no requirement that such acquisition be completed prior to the occurrence of an accident, plaintiff still may not prevail; there was no showing that the Cadillac fell within either proviso contained in subparagraph (c) (1) or (2). In its findings of fact, the trial court expressly found that there was no evidence that the Cadillac "replaced a described vehicle in the policy," which fact plaintiff would have been required to establish in order to bring the Cadillac within the proviso of subparagraph (c) (1). Under the heading "Conclusions of Law," the trial court also found "[t]hat there is no evidence upon which the Court can find that the defendant insured all automobiles owned by Elmer Phillips on the date of acquisition or that Elmer Phillips notified the defendant during the policy period or within 30 days after the date of such acquisition of his election to make policy No. 26FA11312PC and no other policy applicable to such automobile." We note the New Jersey decisions to the effect that notice to the insurance company of acquisition of a newly acquired automobile is not a condition precedent to coverage and therefore failure to give notice does not forfeit coverage where the accident occurs during the notice period prescribed by the policy. *Nat'l Union Fire Ins. Co. v. Falcioni,* 87 N.J. Super. 157, 208 A. 2d 422; *Carr v. State Farm Mut. Ins. Co.,* 115 N.J. Super. 103, 278 A. 2d 239 (dictum); Annotation, 34 A.L.R. 2d 936, 944; 7 Blashfield, Automobile Law and Practice 3d, § 316.6. While under these authorities it may not have been necessary for plaintiff to show notice given by the insured to the company under the facts of the present case in order to establish coverage under the policy sued upon, this would not relieve plaintiff of showing compliance with the other requirement of subparagraph (c) (2) by offering evidence sufficient to obtain a factual find-

ing by the trial court that the company insured all private passenger, farm and utility automobiles owned by Phillips at the date he acquired ownership of the Cadillac. Absent such evidence and finding, the Cadillac did not come within the proviso of subparagraph (c) (2). Again, the burden was upon the plaintiff to present evidence sufficient to convince the trial judge, as trier of the facts, that he should find those facts which would establish coverage of the Cadillac under the defendant's policy. This the plaintiff has failed to do.

[2]    Finally, we consider whether under the facts found or admitted the Cadillac came within the definition of a "non-owned automobile" for which liability insurance coverage was provided by the policy. The policy defines a "non-owned automobile" as follows:

> " 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named Insured or any relative, other than a temporary substitute automobile;"

In this connection the trial judge found that there was no evidence that the Cadillac "was not furnished for his (Phillips') regular use but to the contrary that he had had continuous possession for his regular use with no restrictions from September 25, 1967, until it was repossessed by the First National Bank of Glassboro." Appellant's counsel contends that in making this finding the trial judge acted under a misapprehension of law as to what constitutes "regular use" of an automobile, stating in his brief that "[a]ll the cases involved in the term 'regular use' are concerned with an insured who is driving a motor vehicle provided the insured by his employer." No cases are cited in support of this contention, however, and the clause has been frequently invoked in cases involving family and other relationships in which no employer-employee situation was presented. *Hartford Accident & Indemnity Company v. Hiland,* 349 F. 2d 376 (7th Cir. 1965) ; *Pennsylvania T. & F. Mut. Cas. Ins. Co. v. Robertson,* 259 F. 2d 389 (4th Cir. 1958) ; *Campbell v. Aetna Casualty and Surety Co.,* 211 F. 2d 732 (4th Cir. 1954) ; and cases cited in Annotation, 86 A.L.R. 2d 937. In *Hartford Accident & Indemnity Company v. Hiland, supra,* a sister and brother, for purposes of their own, traded use of their cars. Prior to the time of this trade the brother had been returning to his sister's home about once a month and his sister told him on this occasion to return the car as soon as possible.

Because of business and social obligations, however, the brother did not return his sister's car for approximately two months, at which time he was involved in an accident while driving it. The question presented was whether under these circumstances the sister's car had been furnished for the brother's "regular use." The definition of a "non-owned automobile" in the brother's policy in that case was identical with the definition above quoted from the policy in the case now before us. In that case the Court of Appeals for the Seventh Circuit held that the district court's finding that the brother had unrestricted use of the sister's car, based on the facts in the record, could only lead to the conclusion that the car was furnished for his "regular use," with the result that the sister's car was excluded from coverage under the brother's policy. The opinion in that case points out that "[w]hile the purpose for which the vehicle was supplied may be a relevant factor in determining whether it was for the insured's regular use, . . . the factor of motive bears no necessary relation to the risk assumed by the insurer under the policy, as do the factors of length and type of use. . . . " We find appellant's contention that "regular use" should be limited to the situation where the insured is furnished the vehicle by his employer supported neither by reason nor authority. The contract of insurance contains no such limiting language.

The clear import of the provision excluding coverage of another's automobile which is furnished the insured for his "regular use" is to provide coverage to the insured while engaged in only an infrequent or merely casual use of another's automobile for some quickly achieved purpose but to withhold it where the insured uses the vehicle on a more permanent and reoccurring basis. While each case must be decided on its own particular facts and circumstances, the trial court's finding in the present case that Phillips had had continuous possession of the Cadillac with no restrictions from 25 September 1967 until it was repossessed by the Bank sometime after the accident, fully supports the conclusion that it was furnished for his "regular use" and that it did not come within the policy definition of a "non-owned automobile" for which liability insurance coverage was provided.

Since plaintiff, who had the burden of proof, failed to establish facts sufficient to bring her case within coverage provided by defendant's policy, the judgment appealed from is

Records v. Tape Corp.

Affirmed.

Judges CAMPBELL and MORRIS concur.