325 So.2d 133

**BIRMINGHAM TRUST NATIONAL BANK,**
a corporation

v.

**MIDFIELD PARK, INC.**

**SC 1069.**

Supreme Court of Alabama.

Jan. 2, 1976.

Romaine S. Scott, Jr., Birmingham, for appellant.

Stone, Patton & Kierce, Bessemer, for appellee.

MERRILL, Justice.

This appeal is from a judgment in a declaratory judgment proceeding wherein Midfield Park, Inc. (hereinafter Midfield) sought a construction of an agreement between it and Birmingham Trust National Bank (hereinafter BTNB).

The trial court's construction of the agreement resulted in its issuance of an injunction forbidding BTNB from maintaining a curb along the eastern boundary of its property, and BTNB appealed.

The only issue before this court is whether the trial court correctly construed the agreement. This agreement, dated November 9, 1969, was delivered by Midfield to BTNB simultaneously with a deed of a parcel of land to BTNB. The deed described land consisting of 100 feet square located in the Midfield Shopping Center, Midfield, Alabama, upon which appellant was to construct a branch bank. The agreement, drawn at the suggestion of BTNB, governed the use of certain aspects of the property. We are concerned here specifically with the aspects of ingress and egress. The agreement, in pertinent part, provides as follows:

"(1) Upon the completion of the improvements on Parcel B, [BTNB property] and for and during the period of years thereafter as said Parcel A [Midfield property] shall be used for shopping center purposes and said Parcel B

shall be used for banking purposes, the parties hereto give and grant to the other, and to their respective successors, assigns, lessees, employees, invitees and customers, the right of ingress to and egress from all public roads over and across the respective portions of Parcel[s] A and B which are set aside for ingress and egress generally, it being the intention of the parties that said parcels, which are contiguous, shall not be fenced or otherwise used in such manner as will interfere with the free flow of automobile traffic to and from their respective parcels and the surrounding roads and shopping center area. * * *" The trial judge found as follows:

"A drive-in window was incorporated in the bank building when it was originally constructed. In March or April, 1969, an additional drive-in facility was constructed on the bank's property, at which time a curb was constructed along the easterly side of the bank's land which was contiguous to the land of the plaintiff [Midfield]. Prior to the erection of the curb, a southerly portion of Parcel B was used for ingress and egress by plaintiff and its employees, invitees and customers to and from the public roads, and to said Parcels A and B, which use thereof terminated upon the erection of such curb."

Based on that finding of fact, the trial court concluded that the action of BTNB was in contravention of the pertinent provisions of the agreement and the court enjoined BTNB from maintaining the curb along the eastern boundary of its property. We affirm.

▊ It is the duty of the court to " 'analyze and determine the meaning of a contract * * * when its terms are clear and certain * * * .' " *Metzger Brothers, Inc. v. Friedman*, 288 Ala. 386, 261 So.2d 398, citing *Air Conditioning Engineers v. Small*, 259 Ala. 171, 65 So.2d 698. This court stated in *Franklin Life Ins. Co.*

*v. Brantley*, 231 Ala. 554, 165 So. 834, the following:

"* * * when a contract is clearly stated and expresses the intent of the parties, it will be so applied." (Citations omitted)

▊ A reading of the agreement printed supra would indicate to the reader that the meaning is clear and concise. We find from the record in the lower court that each party agreed and intended to be so bound from their mutual benefit. BTNB noted in its counterclaim filed in circuit court that it wished to protect the rights of ingress and egress from the bank area to the shopping center. It feared that Midfield would isolate the bank from the convenient flow of traffic by fencing it out of the shopping center, or other like measure. Midfield consented to the agreement because it derived benefits also. As stated in BTNB's counterclaim "* * * the respective parties could utilize their respective properties in the most effective and efficient manner * * *" if this access were available to each party. We can only conclude, as did the lower court, that the plain meaning of the agreement and the intent of the parties warrant the injunction against appellant.

▊ Should there be any doubt as to the plain meaning of the agreement, this court will go further to apply an old rule of contract law, long recognized in this jurisdiction. It was stated by this court most effectively in *Alabama-Tennessee Natural Gas Co. v. City of Huntsville*, 275 Ala. 184, 153 So.2d 619:

"* * * courts will construe doubtful terms in a contract more strongly against the party who framed or prepared them, and when the instrument is capable of two constructions, it should receive that which is most unfavorable to the maker. *King v. Capitol Amusement Co.*, 222 Ala. 115, 130 So. 799; *Minge v. Green*, 176 Ala. 343, 58 So.

381; *Livingston v. Arrington,* 28 Ala. 424."

It is clear from the record that BTNB prepared the agreement in question and the ingress and egress provision was included in it at BTNB's insistence. Therefore, assuming any part of the agreement pertinent to this controversy had been found ambiguous or of doubtful meaning, that meaning would have been construed more strongly against BTNB, authorities supra.

Affirmed.

HEFLIN, C. J., and MADDOX, JONES and SHORES, JJ., concur.