507 So.2d 388 (1986)
Charles Dolan HOLT and Dixie Holt
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
85-277.
Supreme Court of Alabama.
August 29, 1986.
Rehearing Denied May 8, 1987.
Sam E. Loftin, Phenix City, for appellants.
J. Pelham Ferrell of Ferrell & McKoon, Phenix City, for appellee.
ADAMS, Justice.
Charles D. Holt and his wife Dixie Holt appeal from a declaratory judgment entered in favor of plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter *389 "State Farm"), which determined that an automobile insurance policy issued to the Holts did not provide coverage to Dixie Holt while she was driving an automobile owned by her stepmother-in-law. We reverse.
On October 27, 1983, Dixie Holt was involved in an automobile accident while driving a Buick automobile owned by her stepmother-in-law, D.D. Holt. Dixie Holt and the occupants of the other automobile involved in the accident were injured. The occupants of the other automobile sued Dixie Holt to recover compensation for their injuries suffered in the accident.
D.D. Holt's Buick was insured by State Farm, but the coverage under her policy was inadequate to fully compensate the occupants of the other automobile for their injuries.
However, Dixie and Charles Holt were the named insureds under another automobile insurance policy issued by State Farm on a Ford automobile owned by them which provided higher coverage. Dixie Holt sought liability and medical coverage from State Farm on this policy. Responding to this claim, State Farm instituted a declaratory judgment action to determine its rights and obligations under the insurance policy on the Ford automobile.
The "non-owned automobile" provisions of the insurance policy under which Dixie Holt sought coverage provided in pertinent sections:
Coverage for the Use of Other Cars
The liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car.
Who is an Insured
When we refer to your car, a newly acquired car or a temporary substitute car, insured means
1. you;
2. your spouse;
3. the relatives of the first person named in the declarations;
4. any other person while using such a car if its use is within the scope of consent of you or your spouse; and
5. any other person or organization liable for the use of such a car by one of the above named insureds.
When we refer to a non-owned car, insured means:
1. the first person named in the declarations;
2. his or her spouse;
3. their relatives; and
4. any person or organization which does not own or hire the car but is liable for its use by one of the above persons.
SECTION IIMEDICAL PAYMENTS Coverage C
....
MEDICAL EXPENSES
We will pay reasonable medical expenses, for bodily injury caused by accident, for services furnished within one year of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices.
Persons for Whom Medical Expenses are Payable.
We will pay medical expenses for bodily injury sustained by:
1. a. the first person named in the declarations;
b. his or her spouse; and
c. their relatives.
....
2. any other person while occupying:
a. a vehicle covered under the liability coverage except a non-owned car. Such vehicle has to be used by a person who is insured under the liability coverage; or * * *
....
A non-owned car is defined in the insurance policy as follows:
Non-Owned Carmeans a car not:
1. owned by,
2. registered in the name of, or
3. furnished or available for the regular or frequent use of:
you, your spouse, or any relatives.

*390 The use has to be within the scope of consent of the owner or person in lawful possession of it.
State Farm contended that there was no coverage under the non-owned automobile provisions of the insurance policy because D.D. Holt's Buick automobile was "furnished or available for the regular or frequent use" of Dixie Holt.
The following evidence relating to the use of the Buick automobile was presented to the jury at the trial:
Charles and Dixie Holt owned three vehiclesincluding the Fordwhich were all insured through State Farm. However, the Holts lent the Ford to their son and daughter-in-law to drive until the son and daughter-in-law could purchase a larger automobile to transport their newly born twins. The Holts' son and daughter-in-law left their small truck at the Holts' house for Dixie Holt to drive if she desired.
D.D. Holt was living with Dixie and Charles Holt while she was recuperating from surgery. D.D. Holt asked Dixie Holt to drive her Buick to and from Dixie Holt's place of employment to build up the Buick's battery and to keep the automobile in running condition. D.D. Holt gave Dixie Holt the keys to the Buick and did not state a date on which Dixie Holt's use of the Buick was to cease. No limitations on the use of the Buick were specified by D.D. Holt. Dixie Holt drove the Buick to and from her place of employment for about ten days before the accident. On her way to work, she picked up her son's maid and drove her to the son's house.
There was testimony that although it was necessary to "jump start" the Buick initially, they had no further difficulty starting the car prior to the accident.
At the close of State Farm's evidence, the Holts moved for a directed verdict and renewed their motion at the close of all the evidence. The Holts contended that the evidence established as a matter of law that the Buick was not "furnished or available for the regular or frequent use" of Dixie Holt. The directed verdict was denied.
In its charge, the trial court defined the terms "frequent use" and "regular use." The trial court instructed the jury to decide the issue of "whether the automobile owned by Mrs. D.D. Holt ... was furnished or available for regular or frequent use of Dixie Holt," and no objection was made by either party to this instruction. The jury determined that the automobile had been furnished or made available for the regular or frequent use of Dixie Holt, and the trial court adjudged that, based upon the jury's determination of fact, Charles and Dixie Holt were not afforded coverage under their policy.
The Holts subsequently moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied by the trial court and the Holts appealed.
Three issues are presented for our resolution:
1. Did the trial judge err by overruling the objections of the Holts' trial counsel to the remarks of State Farm's counsel during closing arguments?
2. Did the trial judge err by denying the Holts' motions for directed verdict, judgment notwithstanding the verdict, and new trial?
3. Did the trial judge err by submitting to the jury the issue of whether the Buick automobile was furnished or available for the regular or frequent use of Dixie Holt?
I.
The record reflects the following occurrence during the closing argument of State Farm's counsel:
MR. FERRELL: * * * If you take the attitude, well, this is a big insurance company, it's got a lot of money we're just going to rule in favor of the defendants for that reasonwhat's that going to do to the insurance industry if juries
MR. LOFTIN: Your Honor, excuse me. I'm going to have to object, may it please the Court. That's improper argument. I believe Mr. Ferrell knows that's improper argument. We respectfully request the jury be instructed to disregard that.

*391 THE COURT: Objection will be overruled.
MR. LOFTIN: Note our exception.
MR. FERRELL: I submit to you that if you baseor juries base their verdicts in a case like this purely out of sympathy for the defendants, not on the basis of the facts, that insurance companies will soon go out of business.
MR. LOFTIN: We renew our objection, may it please the Court.
THE COURT: Same ruling.
The Holts argue that the above remarks by State Farm's counsel were an improper and prejudicial reference to the wealth or poverty of State Farm, and that the trial court erred by not granting their motion for new trial on this ground. State Farm asserts that the objection by the Holts' counsel on the stated ground that the remarks were "improper" was not sufficiently specific to preserve the objection for appellate review. Additionally, State Farm contends that any reference to the wealth or poverty of State Farm by its counsel could not be prejudicial to the Holts.
We are of the opinion that the alleged error in the ruling of the trial court on this issue was preserved for review on appeal. In Davis v. Southland Corp., 465 So.2d 397, 401 (Ala.1985), we stated:
It is generally recognized that, in order to preserve an error for appeal, a specific objection, rather than a general objection, must be made. C. Gamble, McElroy's Alabama Evidence, § 426.01(7) (3rd ed. 1977). This requirement has been incorporated in Rule 46, Ala.R. Civ.P., which provides, in pertinent part:
"[F]or all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor...."
This Court has frequently refused to consider an objection where it was not accompanied by specific grounds. Crawford Coal Co. v. Stephens, 382 So.2d 536 (Ala.1980); Granberry v. Gilbert, 276 Ala. 486, 163 So.2d 641 (1964); Tankersley v. Webb, 263 Ala. 234, 82 So.2d 259 (1955).
However, we have also recognized that a specific ground is not required and a general objection will suffice if the ground "is so manifest that the court and counsel cannot fail to understand it." Jay v. Sears, Roebuck & Co., 340 So.2d 456 (Ala.Civ.App. 1976); see also Travis v. Hubbard, 267 Ala. 670, 104 So.2d 712 (1958). The instant case comes within this exception. The objection raised by counsel for the Holts was sufficient to make known to the court which portion of the argument counsel objected to. It should have been evident to the court and opposing counsel that counsel for the Holts objected to the remarks as a reference to the effect adverse verdicts would have upon the economic condition of State Farm, as well as other insurance companies, and that the argument related to an extraneous matter calculated to influence the jury in rendering its verdict on the issue of coverage.
A jury's resolution of the issues in a case must be based upon applicable rules of law and the evidence properly presented at trial, "not upon the economic condition of either party or the degree of burden that might result from a verdict or judgment." Allison v. Acton-Etheridge Coal Co., 289 Ala. 443, 447, 268 So.2d 725, 729 (1972). This Court has consistently recognized that a reference by counsel for either party to the wealth or economic condition of either party is improper and prejudicial. See, e.g., Young v. Bryan, 445 So.2d 234 (Ala.1983); Patterson v. Craig, 394 So.2d 948 (Ala. 1981); Allison v. Acton-Etheridge Coal Co., 289 Ala. 443, 268 So.2d 725 (1972).
This general rule applies to the argument of counsel about the financial burden that may be imposed upon a party by an unfavorable jury verdict. Although we are unaware of an Alabama case that involves similar remarks made in the context of the case at hand, we find the decision of the Illinois Supreme Court in Panelle v. Chicago Transit Authority, 31 Ill.2d 560, *392 202 N.E.2d 484 (1964), to be close in point. In Panelle, the Court held that the following remarks by counsel were improper and prejudicial and warranted the granting of a new trial:
[I]f we cannot decide what cases must go to be decided by a jury and bring in what evidence we have and expect that case to be decided on the law and the evidence, if we are going to be required to pay every claim made against our company whether we think it is justified or not, if we don't have the right to go to a jury of 12 people who will decide the case on the law and the evidence, then I will tell you frankly, there isn't enough money collected in a year that we would have to pay out in claims in a month.
Panelle v. Chicago Transit Authority, supra, 31 Ill.2d at 561, 202 N.E.2d at 484. The remarks made by State Farm's counsel in the instant case are very similar to those made in Panelle and are improper in our opinion.
As noted in Young v. Bryan, 445 So.2d 234, 238 (Ala.1983):
When an improper argument is made and the trial judge overrules an objection and fails to instruct the jury as to that impropriety or direct that the argument is to be disregarded, "the test upon appeal is not that the argument did unlawfully influence the jury, but whether it might have done so." Williams v. City of Anniston, 257 Ala. 191, 193, 58 So.2d 115, 117 (1952). See also Estis Trucking Co. v. Hammond, 387 So.2d 768 (Ala.1980), and Alabama Farm Bureau Mutual Casualty Insurance Co. v. Humphrey, 54 Ala.App. 343, 308 So.2d 255 (1975).
This is the test that we must apply in the instant case, and, having reviewed the entire record, we cannot say that the remarks of State Farm's counsel could not have influenced the verdict of the jury. Therefore, the judgment of the trial court is due to be reversed and the case remanded.
Although our resolution of the above issue would allow us not to address the remaining two issues, we believe that if this case is retried the other two alleged errors may recur, and in the interest of judicial efficiency we address them now.

II.
The Holts contend that, as a matter of law, the Buick automobile was not furnished or available for the regular or frequent use of Dixie Holt, and, therefore, that their motions for directed verdict, judgment notwithstanding the verdict, and new trial were erroneously overruled by the trial court. The Holts argue that the non-owned automobile exclusion is inapplicable to the instant case because of the fact that State Farm insured all the automobiles owned by Charles and Dixie Holt, as well as D.D. Holt's Buick automobile. It is the Holts' position that the purpose of the non-owned automobile exception is "to prevent an insured who owns or regularly uses more than one vehicle, from securing one policy of insurance covering a specific vehicle and operating other vehicles under the coverage of that one policy." Cotton States Mutual Insurance Co. v. Michalic, 443 So.2d 927, 929 (Ala.1983), and American Automobile Insurance Co. v. English, 266 Ala. 80, 86, 94 So.2d 397, 403 (1957). They argue that since that purpose is not served in the instant case, the exclusion should not apply, and that the trial court erred by not holding that State Farm was obligated to provide coverage under the policy as a matter of law.
On the other hand, State Farm argues:
The reasoning behind the exclusion from coverage of the automobile not described in the policy is based on the fact that premiums on insurance contracts are fixed upon a careful calculation of the hazards assumed, and the scope of the coverage is directly related to breadth or limitation of the coverage provided, and, accordingly, the exclusion is included to avoid overloading a single policy with multiple coverage. Stated otherwise, the purpose of the exclusionary provisions relating to the use of cars not described in a policy is to exclude from coverage the regular or frequent use or availability for use of other cars which would increase the risk on the insurance company *393 without a corresponding increase in the premium charged.
See DiOrio v. New Jersey Manufacturers Ins. Co., 79 N.J. 257, 398 A.2d 1274 (1979); United Services Auto. Ass'n v. Couch, 643 S.W.2d 668 (Tenn.Ct.App.1982); Dairyland Insurance Co. v. Ward, 83 Wash.2d 353, 517 P.2d 966 (1974), Annot., 8 A.L.R. 4th 387 (1981); Annot. 86 A.L.R.2d 937 (1962).
Although the Holts' argument is an appealing one initially, upon closer analysis we must reject it. By recognizing an exception to the application of a non-owned automobile exclusion in cases in which all automobiles owned by an insured and an insured's relatives are insured by the same insurer, an insured could secure a high amount of liability coverage on a single automobile, secure lower amounts of liability coverage on other automobiles, and then seek to apply the higher coverage to the under-insured vehicles without paying for the increased coverage sought to be applied to the underinsured vehicles. Such an outcome would thwart the exclusion's purpose of prohibiting multiple coverage under a single policy of insurance without an increase of premium charges to compensate the insurer for the increased risk.
The trial court did not err by denying the Holts' motions for directed verdict, judgment notwithstanding the verdict, and new trial on the coverage issue.

III.
The Holts argue that the trial court erred to reversal by submitting to the jury the issue of whether the Buick automobile owned by D.D. Holt was furnished or available for the regular or frequent use of Dixie Holt, because, they say, this issue is one of construction of the insurance contract, which is a question of law to be decided by the trial court. In support of their argument, the Holts rely upon this Court's decision in Cotton States Mut. Ins. Co. v. Michalic, 443 So.2d 927 (Ala.1983), in which we stated:
The issue then comes to whether the trial court correctly applied the law to those facts in concluding that "the automobile was not available for his [the insured's] regular use."
The insured argues that this issue, too, is a question of fact. There are a number of cases holding that whether or not an automobile has been "furnished for the regular use" of another creates a question of fact. Kenilworth Insurance Co. v. Cole, 587 S.W.2d 93 (Mo.Civ.App. 1979); Johnson v. Home Indemnity Company, 401 S.W.2d 871 (Tex.Civ.App. 1966); State Farm Mutual Automobile Insurance Company v. Bates, 107 Ga. App. 449, 130 S.E.2d 514 (1963); State Farm Mutual Automobile Insurance Co. v. Smith, 206 Va. 280, 142 S.E.2d 562 (1965); National-Ben Franklin Insurance Company of Pittsburgh v. Prather, 109 Ga.App. 459, 136 S.E.2d 499 (1964); Lincombe v. State Farm Mutual Automobile Insurance Co., 166 So.2d 920 (La.App.1964); Schilling v. Stockel, 26 Wis.2d 525, 133 N.W.2d 335 (1965).
Insurer, on the other hand, argues that the issue is one of construction, and so is a question of law. We agree. This does not answer the question to be resolved in this case, however.
Id. at 929-30.
As the last sentence of the above quotation from Cotton States reveals, our holding that the question of whether an automobile has been furnished for the regular use of an insured is one of law was not germane to the resolution of the issue to be decided in that case. After reconsideration of this issue, we are of the opinion that the comment in Cotton States, to the effect that the "furnished for regular or frequent use" issue is, in all cases, a question of law, is incorrect.
In Alabama, when the terms of a contract are clear and unambiguous, the determination of the meaning of the contract is for the court. Birmingham Trust National Bank v. Midfield Park, Inc., 295 Ala. 136, 325 So.2d 133 (1976). Whether a contract is ambiguous is also a question of law for the court. Hartford Accident & Indemnity Co. v. Morgan County Association of Volunteer Firefighters, 454 So.2d 960 (Ala.1984). Based upon the aforesaid *394 principles, the Court in Cotton States construed the term "regular" as it is used in the non-owned automobile exclusion to mean:
"[S]omething of a steady or uniform course, practice or occurrence as opposed to occasional or incidental." Kenilworth Insurance Co. v. Cole, 587 S.W.2d 93, 99 (Mo.App.1979). The term "available for regular use" has been construed to mean that "[t]hat thing to which it refers can be usually and regularly had or be used whenever it is wanted, needed or desired." Kentucky Farm Bureau Mutual Insurance Co. v. Cook, 590 S.W.2d 885, 890 (Ky.App.1978).
443 So.2d at 930.
And in Alabama Farm Bureau Mut. Ins. Co. v. Livingston, 439 So.2d 30, 32 (Ala. 1983), and Alabama Farm Bureau Mut. Cas. Ins. Co. v. Carswell, 374 So.2d 250, 252 (Ala.1979), this Court noted:
The term "frequent use" has been defined to mean "an often repeated but irregular, casual or incidental use, as distinguished from a regular use." (citations omitted) Continental Casualty Co. v. Suttenfield, 236 F.2d 433 (5th Cir.1956).
"Regular use" has been defined as a "principal use as distinguished from a casual or incidental use." 6C Appleman, Insurance Law and Practice § 4455 at 558 (Buckley ed. 1979).
Although we are of the opinion that the meaning of "regular use" or "frequent use" was properly for the determination of the court in those cases, whether an automobile is furnished or available for the regular or frequent use of an insured under the terms of a non-owned automobile exclusion in an automobile insurance policy ordinarily is a question for the trier of fact to resolve based upon the unique factual circumstances of each case. The Kansas Supreme Court in Brooks v. Link, 212 Kan. 690, 695, 512 P.2d 374, 378 (1973), observed:
[I]n practically all of the cases we have examined the courts agree that the question whether the particular use of a "non-owned automobile" is a "regular use" within the meaning of the policy is a question of fact. The courts are in agreement that no hard and fast rule has been or can be established for determining this question but each case must stand or fall upon an examination of the facts in the particular case.
Our own reading of the case authority reveals that the overwhelming majority of jurisdictions that have considered the question are in accord with the Kansas Supreme Court's observation. See Farmers Insurance Co. of Arizona v. Zumstein, 138 Ariz. 469, 675 P.2d 729 (1983); Travelers Indemnity Co. v. Hudson, 15 Ariz.App. 371, 488 P.2d 1008 (1971); Tillotson v. Farmers Insurance Co., 276 Ark. 450, 637 S.W.2d 541 (1982); Northwest Casualty Co. v. Legg, 91 Cal.App.2d 19, 204 P.2d 106 (1949); Pacific Automobile Insurance Co. v. Lewis, 56 Cal.App.2d 597, 132 P.2d 846 (1943); Young v. American Fidelity Ins. Co., 2 Conn.App. 282, 479 A.2d 244 (1984); Home Insurance Co. v. Kennedy, 52 Del. 42, 152 A.2d 115 (1959); State Farm Mutual Auto. Insurance Co. v. Hench, 171 So.2d 11 (Fla.Dist.Ct.App.1965); Cotton States Mutual Insurance Co. v. Falls, 114 Ga.App. 812, 152 S.E.2d 811 (1966); State Farm Mutual Automobile Insurance Co. v. Bates, 107 Ga.App. 449, 130 S.E.2d 514 (1963); Rodenkirk v. State Farm Mutual Automobile Insurance Co., 325 Ill.App. 421, 60 N.E.2d 269 (1945); Kentucky Farm Bureau Mutual Insurance Co. v. Cook, 590 S.W.2d 885 (Ky.Ct.App.1978); rev'd on other grounds, 590 S.W.2d 875; Lincombe v. State Farm Mutual Automobile Insurance Co., 166 So.2d 920 (La.App.1964); Pearl Grange Fruit Exchange Inc. v. Shembarger, 5 Mich.App. 278, 146 N.W.2d 135 (1966); Van Overbeke v. State Farm Mutual Automobile Insurance Co., 303 Minn. 387, 227 N.W.2d 807 (1975); Kenilworth Insurance Co. v. Cole, 587 S.W.2d 93 (Mo.Civ.App.1979); Allstate Ins. Co. v. Chatigny, 103 N.H. 81, 166 A.2d 122 (1960); Butler v. Bonner & Barnwall, Inc., 56 N.J. 567, 267 A.2d 527 (1970); Devine v. Aetna Casualty & Surety Co., 19 N.C.App. 198, 198 S.E.2d 471, cert. denied, 284 N.C. 253, 200 S.E.2d 653 (1973); Farm *395 Bureau Mutual Automobile Insurance Co. v. Boecher, 37 O.L.A. 553, 48 N.E.2d 895 (1942); Wallace Co. v. State Farm Mutual Automobile Insurance Co., 220 Or. 520, 349 P.2d 789 (1960); Carr v. Home Indemnity Co., 404 Pa. 27, 170 A.2d 588 (1961); Ricci v. United States Fidelity & Guaranty Co., 110 R.I. 68, 290 A.2d 408 (1972); State Farm Mutual Automobile Insurance Co. v. Smith, 206 Va. 280, 142 S.E.2d 562 (1965); Jones v. Perkins, 75 Wis.2d 18, 248 N.W.2d 468 (1977); Schilling v. Stockel, 26 Wis.2d 525, 133 N.W.2d 335 (1965). Our own cases prior to Cotton States tacitly approved the submission of this issue to the jury for resolution in those cases in which the declaratory judgment action was tried to a jury. See, e.g., Alabama Farm Bureau Mutual Casualty Insurance Co. v. Carswell, 374 So.2d 250 (Ala.1979). We can conceive of few issues that are any more suited for resolution by the trier of fact. When conflicting inferences of fact may be drawn under the evidence, as they may be in the instant case, the issue is not one of construction, but, rather, the application of the judicial construction of the language to the facts.
Therefore, we hold that the issue of whether an automobile is furnished or available for the regular or frequent use of another under the terms of a non-owned automobile clause in a contract of insurance is ordinarily a question of fact, and to the extent that certain language in Cotton States Mutual Insurance Co. v. Michalic, supra, is in conflict with our holding in the instant case, that case is overruled. The trial court did not err by submitting the issue to the jury in the instant case.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
MADDOX, J., concurs specially.
TORBERT, C.J., and STEAGALL, J., not sitting.
MADDOX, Justice (concurring specially).
In the majority opinion, the following statement is made:
"Therefore, we hold that the issue of whether an automobile is furnished or available for the regular or frequent use of another under the terms of a non-owned automobile clause in a contract of insurance is ordinarily a question of fact, and to the extent that certain language in Cotton States Mutual Insurance Co. v. Michalic, [443 So.2d 927 (Ala.1983),] is in conflict with our holding in the instant case, that case is overruled."
I agree that there is some language in Cotton States Mutual Ins. Co. v. Michalic, which could be construed to conflict with the holding quoted above, and, therefore, I agree that any statement in Cotton States which is contrary to the rule announced today should not be followed. Specifically, in Cotton States, I wrote for the Court the following:
"Insurer, on the other hand, argues that the issue is one of construction, and so is a question of law. We agree. This does not answer the question to be resolved in this case, however." 443 So.2d at 930.
The majority opinion in the present case addresses that last sentence, as follows:
"As the last sentence of the above quotation from Cotton States reveals, our holding that the question of whether an automobile has been furnished for the regular use of an insured is one of law was not germane to the resolution of the issue to be decided in that case. After reconsideration of this issue, we are of the opinion that the comment in Cotton States, to the effect that the `furnished for regular or frequent use' issue is, in all cases, a question of law, is incorrect."
I concur in this interpretation of the sentence, and file this special concurrence for that purpose.