ROBERTSON, Presiding Judge.
On October 8, 1991, Leonard Shockley, d/b/a Western Sizziin Steak House, sued Walnut Equipment Leasing Company, Inc., a Pennsylvania corporation; Alec J. Boozer, the duly authorized agent of Tom Richardson and Ted Jones, d/b/a 1st Bank Card; Tom Richardson and Ted Jones, partners d/b/a 1st Bank Card; Union Federal Savings Bank; and various fictitiously named parties. Shockley alleged that Boozer was the duly authorized agent of Walnut and the other defendants, that as their agent Boozer had made false representations to Shockley, and that Shockley had relied upon those representations in entering into contracts with Walnut and the other defendants. Shockley also alleged that Walnut and the other defendants had materially breached their contract with him. Shockley demanded a jury trial.
A jury trial was held, and on August 5, 1993, after Shockley rested his case, Boozer, Richardson, and Walnut each moved for a directed verdict; however, the trial court granted only Boozer’s motion. Richardson and Walnut also moved for directed verdicts at the close of all of the evidence; the trial court denied these motions. At the close of all of the evidence, Shockley moved for a default judgment against Ted Jones, d/b/a 1st Bank Card, for his failure to answer or otherwise defend himself against Shockley’s action; the trial court granted Shockley’s motion and entered a default judgment against Ted Jones. After deliberations, the jury returned a verdict in favor of Shockley and against Walnut, awarding Shockley $4,682.16 as compensatory damages and $5,000 as punitive damages. The jury also *5 returned a verdict in favor of Shockley and against Tom Richardson, awarding Shockley $258 as compensatory damages and $5,000 as punitive damages.
On August 12,1993, the trial court entered a judgment on the jury’s verdicts and also awarded Shockley his costs of the case. Richardson moved for a judgment notwithstanding the verdict; the trial court denied the motion.
Walnut appeals, raising two issues: (1) whether the trial court erred by allowing testimony regarding Walnut’s Pennsylvania judgment against Shockley, and (2) whether the trial court erred by denying Walnut’s motion for a directed verdict.
The record reveals that on May 30, 1991, Shockley was operating a Western Sizzlin Steak House in Alexander City, Alabama, and that Boozer, a salesman for 1st Bank Card, called upon Shockley to show Shockley an electronic credit card processing system and to explain how under the system Union Federal Savings Bank would receive the credit card charges, debit the account of the customer, and electronically transfer the funds to Shockley’s bank account, with a deduction for handling charges. That same day, Shockley entered into a contract with Dallas Leasing Company, whereby he would lease equipment for an electronic credit card processing system for Mastercard, Visa, and American Express credit cards. The record reflects that Shockley gave Boozer $258 for installation fees and a check for $100 as prepayment of the first and last months’ rental fees.
The record also reflects that 1st Bank Card had changed leasing companies and that Shockley needed to execute a new contract with Walnut; that on June 6, 1991, Boozer went to Shockley’s business and gave Shockley a check for $100, representing a refund of the rental fees from Dallas Leasing Company; that Boozer also had Shockley execute Walnut’s contract documents; and that the documents included a lease and a purchase order for a Tranz 330 credit card authorization terminal and a P-250 printer. The contract contained a provision stating that the contract “shall be deemed to have been entered into in the State of Pennsylvania,” that it would be interpreted in accordance with the laws of Pennsylvania, and that Shockley consented to the Pennsylvania courts’ exercising personal jurisdiction over him. Shockley gave Boozer a check for $100 made payable to Walnut for the first and last months’ rental fees. On June 11, 1991, Walnut accepted and executed the contract and mailed a copy of the executed contract to Shockley.
On June 25,1991, the electronic credit card processing equipment (a Model XL300 credit card authorization terminal and a P-200 printer) was delivered and installed in Shockley’s restaurant. The record indicates that the equipment was tested using a Visa credit card and that the equipment processed the transaction; however, the equipment would not process an American Express credit card. The record reflects that on the day the equipment was installed, Shockley executed a certificate of acceptance and satisfaction, acknowledging and accepting the XL300 and the P-200 printer. The record reflects that several days later Shockley received a copy of the executed contract from Walnut.
The record reveals that Shockley could not get the equipment to process American Express credit cards and began notifying Walnut and the other defendants. Shockley testified that when he was unable to get Walnut, or the other defendants, to speak to him about his problem with the equipment or to correct the problem with the equipment, he stopped making the rent payments. The record reflects that the equipment delivered to Shockley was not the equipment that he had leased and that the equipment delivered to Shockley was not programmed to process American Express credit cards.
On October 16,1991, Walnut filed a confession of judgment against Shockley in the Delaware County Court of Common Pleas in Pennsylvania, based upon the provisions of the contract. The record reveals that Walnut obtained a judgment against Shockley in the amount of $3,682.16 and that the judgment was later withdrawn by Walnut. At the trial of this cause, Walnut initially objected to the introduction of the Pennsylvania *6 judgment into evidence and to any testimony regarding that judgment.
Walnut argues that the trial court erred by allowing testimony regarding the Pennsylvania judgment that Walnut had obtained against Shockley. However, Walnut’s objection to the testimony was a general objection and did not state any grounds for the objection. “A general objection to evidence is one which does not definitely and specifically state the ground upon which it is based so that the court may intelligently rule on it.” C. Gamble, McElroy’s Alabama Evidence § 426.01(7) (4th ed. 1991). “A general objection ordinarily waives appellate review while a specific objection is normally a condition precedent to appellate review.” In re Powers, 523 So.2d 1079, 1082 (Ala.Civ.App.1988). However, “a specific ground is not required and a general objection will suffice if the ground ‘is so manifest that the court and counsel cannot fail to understand it.’ ” Holt v. State Farm Mutual Automobile Insurance Co., 507 So.2d 388, 391 (Ala.1986) (citations omitted). This case does not come within the exception, because no ground was given for Walnut’s objection and because the ground for the objection was not so manifest that the court and counsel could not fail to understand it. Consequently, Walnut waived appellate review of the alleged objectionable testimony regarding the Pennsylvania judgment.
We next review the issue whether the trial court erred by denying Walnut’s motion for a directed verdict. Walnut argues that Shockley did not present substantial evidence that Boozer defrauded him or that Boozer was an agent of Walnut. However, in a case where there has been a jury verdict, “for a jury verdict loser to appeal, challenging the sufficiency of the evidence, he must first have moved for a directed verdict at the close of all the evidence and then he must renew that motion by moving for a judgment notwithstanding the verdict or for a new trial.” K.S. v. Carr, 618 So.2d 707, 712 (Ala.1993) (emphasis in the original). Walnut did not renew its motion for a directed verdict by moving for a judgment notwithstanding the verdict; therefore, on appeal it cannot challenge the sufficiency of the evidence.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.