387 So.2d 768 (1980)
ESTIS TRUCKING COMPANY, INC., a corp., et al.
v.
Gordon HAMMOND et al.
78-672.
Supreme Court of Alabama.
August 8, 1980.
Rehearing Denied September 19, 1980.
Bert P. Taylor of McDaniel, Hall, Parsons & Conerly, Birmingham, for appellants.
Watson, Moore & Chestnut, Huntsville, and J. C. Kellett of Kellett & Gillis, Fort Payne, for appellees.
FAULKNER, Justice.
This case arose out of an automobile-truck accident which occurred in DeKalb County on July 26, 1976, near an intersection *769 of Alabama Highway 75 and DeKalb County Highway 72. The jury returned a verdict for the plaintiffs. Defendants' motion for new trial was denied. We reverse.
Frankie Langley, employed by Estis Trucking Company, Inc., was driving a coal truck north on Alabama Highway 75. Langley was following Gary Lowe, a plaintiffs' witness at trial. At the trial, Lowe testified that he saw the coal truck in his rearview mirror and that it followed him for several miles. After cresting a hill, Lowe approached the intersection of Alabama Highway 75 and DeKalb County Highway 72, approximately 300 yards below the crest of the hill. He switched on his turn indicator and began slowing to negotiate a turn onto the county highway. Lowe testified that as the coal truck topped the crest of the hill behind him, it increased speed.
Lowe testified that Langley put on his breaks to avoid striking him and crossed lanes; Marie Hammond, traveling in the opposite direction, collided with the truck. She and her husband brought suit against Langley and Estis Trucking Company, Inc., claiming damages of $500,000.00. The case was tried and a jury verdict was returned in favor of both plaintiffs and against both defendants for $200,000.00.
Defendants contend that the trial judge committed numerous errors. We pretermit discussion of all alleged errors except the following: Did the trial court err in denying defendants' motion for new trial based upon alleged improper comments during the course of trial and based upon alleged improper closing argument by plaintiffs' counsel. We hold that the trial court did so err and we reverse and remand for a new trial.
During the course of trial, following redirect examination of Mrs. Hammond, the following discussion occurred, viz:
MR. KELLETT: That's all.
MR. WATSON: Your Honor, we are going to have a few witnesses here on the before and after condition of this lady, and I have discussed it with Mrs. Hammond, and with the witnesses, and I would like to ask that she be excused for this testimony, if I may, regarding her condition. I think the testimony would be more truthful if she were excused, and I think it might save her some embarrassment.
MR. LIVINGSTON: We would like to object to those remarks by counsel, and move that this jury be instructed to disregard the remarks of counsel, that they are designed solely for the purpose of prejudicing the defendant, and solely for the purpose of injecting testimony into the record, and I think it is so prejudicial that I believe we will move for a mistrial at this point. I don't believe statements like that have anything to do with the issues in this case.
MR. WATSON: I don't know how else I can say it.
MR. LIVINGSTON: Well, it ought not to be said, period. It hasn't got anything to do with the trial of this case. We didn't bring this lawsuit, Mrs. Hammond is the one who brought the lawsuit.
MR. WATSON: Well, if the court please, we believe the testimony so far has been justified in her bringing the suit, and I don't think there has been anything said here to indicate that she shouldn't have brought it.
MR. LIVINGSTON: I would like very much for the jury to be excluded while these speeches are being made, and while he is injecting all of this into the record, and I would like to renew my motion.
* * * * * *
COURT: Those remarks were directed to me. I know you heard it, but don't consider it in your deliberations at all. Did you object to her being ....
MR. LIVINGSTON: No, sir. She doesn't have to stay as far as we are concerned. It's her case.
COURT: You objected to the statement he made?
LIVINGSTON: I objected to the statement, and that is the basis for our motion for a mistrial, and we would like to have a ruling on that.
*770 COURT: All right. Now, ladies and gentlemen, the statements that the counsel made, they were made to me, and they are not part of the evidence that you will consider in making up your minds in arriving at a decision. So, you don't consider those statements that you heard, if you heard them, and overrule the motion for a mistrial. Mrs. Hammond, will you come and go with the bailiff.
These comments on the evidence made by plaintiffs' attorney were prejudicial to defendants, were statements not in evidence, and were, therefore, improper. But, as can be seen from a reading of the transcript, the trial court made a curative instruction to the jurors, instructing them to ignore any comments made by the attorneys. Since the curative instruction was given, we cannot say that the trial court erred in denying defendants' motion for new trial based solely upon the improper comments made by plaintiffs' attorney.
After both sides had rested their cases, plaintiffs' attorney made the following statements in closing argument to the jury, viz:
[At a point when Mr. Watson was arguing the case to the Jury on behalf of the Plaintiffs]
MR. WATSON: They are talking about truth, and, it would have been a simple matter to get the truth about that distance. It is their defense, it is not our case, and Estis Trucking Company and the driver, Frankie Wayne Langley, hired Mr.or had him hired, Mr. Taylor from Birmingham, spent the money from that. They hired Mr. Livingston from Scottsboro and spent the money for that.
MR. LIVINGSTON: If it please, Your Honor, I want to object to that, because that is an improper line of argument, and ask that the jurors be instructed to disregard it.
MR. WATSON: I'll withdraw that.
[At another point while Mr. Watson was arguing to the Jury]
MR. WATSON: They took the deposition of the doctors in Birmingham, and they did what they would have you believe is proper in building this defense about the distance, yet they come up here and bring this little picture that is taken way up the road from where the accident happened. I really believe that the Estis Trucking Company and the defense in this case could have afforded a ....
MR. LIVINGSTON: We move for a mistrial.
MR. TAYLOR: We move for a mistrial.
MR. LIVINGSTON: The jury recognizes what he has injected into the case.
MR. TAYLOR: I move for a mistrial, Your Honor. That is totally wrong argument, improper argument, and just strictly prejudicial and intended to prejudice the minds of the jury. It hasn't got anything to do with the facts in the case, and I move for a mistrial for that.
* * * * * *
MR. WATSON: Well, I'll withdraw that, then, if there's something wrong with that, and I've been doing it for twenty years, talking about pictures, but if there is something wrong, me discussing the fact that they would have gotten a better picture than that, I'll withdraw it.
MR. LIVINGSTON: We would like to renew our motion for a mistrial, based on the prejudicial statements made to the jury in the argument.
COURT: You will withdraw it?
* * * * * *
COURT: Now, I have a motion for a mistrial. The motion is overruled.
* * * * * *
COURT: Wait just a minute. Let me speak to the jury just a moment. I don't know what all has been said by witnesses, or by lawyers. I try to forget, because it is improper for me to comment on the evidence. Now, you will make up your minds, of course, from the evidence you heard. Now, if there has been exchanges between the lawyers to one another, that is not in itself a part of the evidence that you are to consider in arriving at a verdict. Now, after a couple of days of trial, *771 of course, nerves get frayed, and so forth, and it is understandable. I understand it probably more than you, because this is the first time some of you have been here, but I understand that it is not unusual, but you don't consider it, and, I know several of you, and I know that you won't consider it if I tell you not to. Overrule the motion for a mistrial, go ahead with your argument.
* * * * * *
[At another point when Mr. Watson was arguing to the Jury]
MR. WATSON: Mr. Taylor stated to you that he is from Birmingham, but he's shocked about this $500,000.00. Ladies and gentlemen, he's not shocked. He deals in these figures everyday. He tries lawsuits all over the State of Alabama.
MR. TAYLOR: Your Honor, I again move for a mistrial. That has no place whatsoever in this lawsuit, and it is highly prejudicial.
* * * * * *
MR. LIVINGSTON: I think that's grounds for a mistrial.
MR. TAYLOR: I am moving for a mistrial right now. I really am, because that is totally false.
MR. WATSON: Judge, I'll withdraw it, and I'll start it another way. I would like to get through with it, if it is all right.
COURT: Overrule your motion for a mistrial.
MR. WATSON: Ladies and gentlemen, Mr. Taylor is not shocked about $500,000.00, regardless of where he is from, and regardless of where he tries lawsuits. He is not shocked.
MR. LIVINGSTON: I would like to make the same motion, because that hasn't got a thing in the world to do with whether Mrs. Hammond-what her injuries are dealing with at all, not the first thing, Your Honor, and we would like to make the same motion for the benefit of the record.
COURT: Overruled.
[At another point when Mr. Watson was arguing to the Jury]
MR. WATSON: Ladies and gentlemen of the jury, I have no reluctance in asking you to grant this lady $250,000.00 for the injury she has suffered. I have absolutely no reluctance, none whatsoever. If somebody told you that you were going to go through that wreck, and go through what we have shown here that she has gone through since then ....
MR. LIVINGSTON: We want to make another objection. He is asking the jury to place themselves in the place of this lady here. That is precisely what he said, Your Honor, and that is highly irrelevant, and Mr. Watson knows that that is highly improper, and we ask that the jury be disregarded to instruct-or, instructed to disregard that statement.
MR. WATSON: If I could get through with it, it might not be objectionable. I can't get through with a sentence. When I get in the middle of it the objection comes, because they are afraid of what I might I might say, I guess.
COURT: Overruled.
Defendants contend that this argument was given for the sole purpose of prejudicing defendants, improperly introduced the wealth of defendants to the jury and improperly requested the jurors to place themselves in the position of plaintiff, Mrs. Hammond. Alabama Farm Bureau Mutual Casualty Insurance Co. v. Humphrey, 54 Ala.App. 343, 308 So.2d 255 (1975), contains a concise, and correct, statement of the law in Alabama regarding closing argument.
In a case of improper argument where the trial judge overrules objection and fails to instruct the jury as to impropriety with direction to disregard, the test upon appeal is not that the argument did unlawfully influence the jury, but whether it might have done so. Williams v. City of Anniston, 257 Ala. 191, 58 So.2d 115.
In a case where objection to improper argument is made and sustained, with immediate and strong action by the trial court instructing the jury that such argument was not correct and admonishing *772 them not to consider it, the test on motion for new trial and on appeal is whether the argument was so harmful and prejudicial that its influence was not or could not be eradicated by the action of the court. McLemore v. International Union, etc., 264 Ala. 538, 88 So.2d 170. When, after applying this test, the trial court denies a motion for new trial, its determination is presumed correct on appeal. McLemore v. International Union, etc., supra. In order to overturn such presumption, the reviewing court must determine from the facts and circumstances that the ruling of the court was unjust and plainly erroneous. [Emphasis added.] 54 Ala.App. at 348, 308 So.2d at 259.
We have carefully considered the evidence, the record of the argument, and the corrective actions of the court. We note that the trial court did not instruct the jury that the argument was improper. After consideration of these factors, we hold that the argument was improper and highly prejudicial and its influence was not eradicated from the mind of the jury by the admonition of the trial court in this case.
In Allison v. Acton-Etheridge Coal Co., Inc., 289 Ala. 443, 268 So.2d 725 (1972), this Court reversed a jury verdict returned for the defendants because of improper statements made during closing argument, viz:
MR. NORMAN [attorney for defendant]: * * *
It's a great thing, folks, to be a very wealthy man and to be able to go out here and hire two law firms with four lawyers

* * * * * *
MR. HARE: We object to that.
THE COURT: I sustain the objection. Ladies and Gentlemen, I will say now that arguments of counsel is not evidence in this case. You are going to be called upon to decide this case from the facts that you hear from the witness stand, so don't consider-of course, that is not evidence, and I sustain your objection to that type argument.

* * * * * *
MR. HARE: You told them not to consider it evidence. I ask to charge them as improper argument.
THE COURT: I am going to say-I am asking him not to argue that anymore along those lines. Now go ahead.
In his oral charge to the jury the court made the following statement to the jury:
"I told you during the trial of this lawsuit that remarks made among counsel was not evidence in the case. Their arguments is not evidence in the case. It is their duty. It is their right to represent their clients to the best of their ability, and these gentlemen have done that. They have represented their client. That is their duty to do that.
"But as I say, you decide this lawsuit from the facts that you hear from the witness stand along with the exhibits that have been introduced in this lawsuit. You are not to decide this lawsuit upon any sympathy for anyone, nor are you to decide this lawsuit upon any prejudice against anyone, and you are not to go back there and guess, surmise."
It is to be noted that the above instruction in no wise refers to the impropriety of defendant's counsel's reference to the plaintiff as a very wealthy man.

* * * * * *
"* * * When an attorney in the heat of debate, goes to such extraordinary lengths, generally, the court should promptly set aside any verdict that may be rendered for his client. The repressive powers of a court, to prevent such departures from legitimate argument of a cause before a jury, should be vigorously applied. No mere statement that it is out of order or improper can meet the exigencies of the case." [Quoting from Alabama Fuel & Iron Co. v. Benante, 11 Ala.App. 644, 66 So. 942 (1942).]

* * * * * *
While the above case [Pearson v. Birmingham Transit Co., 264 Ala. 350, 87 So.2d 857 (1956)], dealt with the poisonous effect of injecting insurance into argument rather than an opponent's wealth, we can discern *773 little difference between a reference to an opponent's protection by insurance, and a reference to his wealth. The issues of liability for damages, or entitlement to damages, must validly be determined by the rules of legal liability applicable, and not upon the economic condition of either party, or the degree of burden that might result from a verdict or judgment.
But our conclusions need not rest upon the analogy of the poisonous effect of a reference to insurance to that of wealth of an opponent, for in Pryor v. Limestone Co., 225 Ala. 540, 144 So. 18, this court condemned as ineradicably prejudicial a reference in argument to an opponent's wealth.

* * * * * *
It must be remembered that in the present case the court at no time instructed the jury that the argument made by defense counsel was improper, but after sustaining the objection merely told the jury that argument of counsel was not evidence in the case, and upon counsel for the plaintiff requesting instructions that the argument was improper only replied: "I am asking him not to argue that anymore along those lines. Now go ahead."
Nor can the rather general instructions in his oral charge that remarks of counsel were not evidence, and that the jury was not to decide the case upon sympathy for anyone, or prejudice against anyone be deemed to have eradicated the error of the argument since under our cases we think the argument must be deemed ineradicable. [Emphasis added.] 289 Ala. at 446-448, 308 So.2d at 727.
Plaintiffs' attorney in the instant case stated that in his opinion defendants "could have afforded . . .," whereupon defendants' attorney objected to the statement and moved for a mistrial. It is clear to us from the argument made previous to this statement that the language used by plaintiffs' attorney was a reference to the wealth, or supposed wealth, of defendants, to the effect that defendants could have afforded a better photograph than the one they used at trial, and was, therefore, improper. Moreover, plaintiffs' attorney stated that defendants' attorney tried lawsuits "all over the State of Alabama" for $500,000.00. This language implies that defendants' attorney tries only expensive lawsuits, that the damages in this instant lawsuit must have been perceived by defendants to be potentially large or they would not have hired such an expensive attorney, and that defendants must be wealthy to afford an attorney who tries only $500,000 lawsuits. This argument is also improper as it reflects upon the defendants' wealth.
We find that the cumulative effect of these two statements, coupled with the previously noted comments on the evidence made by plaintiffs' attorney during the course of trial, was so poisonous and so prejudicial to defendants in this case that the argument was ineradicable, notwithstanding the trial court's instruction to the jury. Blue v. State, 246 Ala. 73, 19 So.2d 11 (1944). Although the cumulative error doctrine announced in Blue was there applied in a criminal case, it is equally applicable in civil cases. Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389 (1930). The fact that plaintiffs' attorney retracted the statements after defendants' attorney objected to them is of no consequence. A retraction of the argument in no way eradicates the effect of the improper argument on the minds of the jurors. Metropolitan Life Insurance Co. v. Carter, 212 Ala. 212, 102 So. 130 (1924).
The last statement made in closing argument by plaintiffs' attorney to the effect that "if somebody told you that you were going to go through that wreck," etc., was equally prejudicial. In Hayles v. Jeter, 279 Ala. 283, 184 So.2d 363 (1966), this Court held that similar argument, given the context in which the argument was presented to the Court, was not reversible error. In Hayles, plaintiff's counsel, in his closing argument to the jury stated, "I ask you, gentlemen, to put yourself in the Plaintiff's place . . .," whereupon defendant's attorney immediately objected. The Court, in addressing whether this bare invitation to the jury was reversible error, stated, viz:

*774 * * * Plaintiff's counsel may have been saying that plaintiff was not negligent in so doing and asking the jurors to place themselves in plaintiff's place in judging whether he was guilty of contributory negligence in so doing. We do not say such argument would be proper. We do not, however, have before us enough of the argument to say that the bare invitation constituted such a forbidden appeal to the sympathy of the jurors as to prejudice defendant to the extent that this judgment must be reversed. 279 Ala. at 285, 286, 184 So.2d at 363-366.
Likewise, in British General Insurance Co. v. Simpson Sales Co., 265 Ala. 683, 93 So.2d 763 (1957), this Court held that there had not been a showing of injury requiring reversal when plaintiff's counsel, in closing argument, asked the jury, "How would you like to have that happen to you?" In British General the main issue was whether plaintiff was insured, plaintiff's counsel contending that plaintiff was led by the insurance agent to believe that he was covered, and asking, in argument, for the jurors to determine whether they would have believed they were covered if the same thing had happened to them.
However, the argument in the instant case goes beyond the argument alleged to be improper in Hayles and British General. In the instant case, there was not merely a bare invitation for the jurors to put themselves in the place of the plaintiff. There was more. The argument here presented was an appeal to the jurors' feelings and passion, tantamount to requesting the jurors to hold in favor of the plaintiffs based upon the jurors' sympathy for Mrs. Hammond. A jury verdict reached in favor of any party on the basis of bias, prejudice or sympathy must be set aside.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, JONES, EMBRY and BEATTY, JJ., concur.
SHORES, J., dissents.
BLOODWORTH and ALMON, JJ., not sitting.
SHORES, Justice (dissenting):
I dissent. Even if the argument were improper, it was clearly not ineradicable.