Thomas Boshell and his wife, Bobbie Jean Boshell, own their residence, where they have lived since 1960. In 1985, Drummond Company, Inc., erected a transformer on the property next to the Boshells' property in order to supply electricity to a mining operation that Drummond Company was conducting. In 1990, the Boshells sued Drummond Company, alleging that over a period of time the noise from the transformer had increased to an intolerable level and that the transformer emits noise at such a level that it interferes with the Boshells' peaceful use and enjoyment of their property. The Boshells alleged private nuisance, trespass, and negligent and/or wanton placement of the transformer next to their residence. A jury returned a verdict in favor of the Boshells, assessing compensatory damages of $300,000. The court denied Drummond Company's motion for a judgment notwithstanding the verdict or for a new trial. Drummond Company appeals from the judgment based on the verdict.
Drummond Company first argues that the trial court erred in refusing to give its requested jury charge regarding nuisance. The trial court instructed the jury on nuisance as follows:
 "The definition of nuisance. You have had it read to you, and I'm going to read it to you again. A nuisance is anything that causes hurt, inconvenience, or damage to another. And the fact that an act done may otherwise be lawful does not prevent it from being a nuisance. The act complained of must be such that it would affect an ordinary, reasonable person and must not be fanciful or such as would affect a person of fastidious taste."
Where the trial court's oral charge adequately covers the law stated in the requested charge, the court may properly refuse to give the requested charge. Bateh v. Brown, 293 Ala. 704,310 So.2d 186 (1975); Rule 51, A.R.Civ.P. The trial court's instruction regarding nuisance was a correct statement of law; see Alabama Pattern Jury Instructions: Civil 31.50. Therefore, the trial court did not err in refusing to give Drummond Company's requested charge.
Drummond Company also argues that the trial court erred in overruling its objection to certain comments made by the Boshells' counsel during closing arguments and that the trial court erred in refusing to grant Drummond Company's motion for a mistrial on the ground of improper argument. Specifically, Drummond Company argues that comments made by the Boshells' counsel refer to the wealth of Drummond Company. Those comments are:
 "MR. KING [the Boshells' counsel]: We are not going to be run over anymore. We're not going to let the defenseless be run over anymore. We are not going to let the big motoring folks run over the little motoring folks. We are going to draw the line.
 "THE COURT: Ladies and gentlemen, you will disregard any remarks by any attorney inasmuch, along that line, all persons stand equal in a court of law.
". . . .
 "MR. KING: I want you to follow your oaths and do what you know is right. And I know you know it's right. You might think things late at night and you wonder why you do them, what you're made of. The Philistine situation, David was the strong one, defeated Goliath. The weak versus the strong. Courage out of humility.
 "MR. JACKSON [Drummond's counsel]: Judge, that is totally improper argument in comparing to that.
"MR. KING: I'm not comparing money, Eddie.
 "MR. JACKSON: You are comparing a weak person to a strong. We move for a mistrial, Your Honor.
"THE COURT: Denied. Go ahead."
After reviewing those comments, we conclude that the comments do not refer to the wealth of the parties. Accordingly, the trial court did not err in overruling Drummond Company's objection to those comments and in denying Drummond Company's motion for a mistrial.
Drummond Company next argues that the trial court erred in allowing Thomas Boshell's *Page 1243 
treating physician, Dr. Gregory Flippo, to testify as an expert witness. Drummond Company asserts that Dr. Flippo had no personal knowledge of the noise level of the transformer, of the distance between the transformer and the Boshells' residence, or of the conditions for which the Boshells claimed injury. Drummond Company also asserts that Dr. Flippo offered no facts upon which his opinions were based and that Dr. Flippo's opinions were not based on a proper predicate and were speculative.
An expert witness may give opinion testimony based upon his own knowledge of the facts, stating the facts and then his opinion, or based upon facts in evidence that are assumed in a hypothetical question, but where the expert lacks personal knowledge of facts involved in a case, the expert may not give his opinion unless those facts have been properly hypothesized before the expert witness. Star Freight, Inc. v. Sheffield,587 So.2d 946 (Ala. 1991), quoting Alabama Power Co. v. Robinson,447 So.2d 148, 152-53 (Ala. 1983).
 "The expert opinion testimony of a physician-witness as to the condition, diagnosis, prognosis or otherwise of his patient, whom he has personally examined, may be based in part on the history of the case, including both his present and past condition and symptoms as related by the patient to the physician-witness in connection with, and as part of, the examination. The physician, for the purpose of showing the basis of his opinion, may testify to the patient's statements to him concerning the history of the case."
C. Gamble, McElroy's Alabama Evidence, § 110.01(1) (4th ed. 1991).
Dr. Flippo testified that he first treated Thomas Boshell in February 1989 for chronic lung disease. Dr. Flippo further testified in the following colloquy:
"Q. Doctor, as a medical doctor, what type of environment would you prescribe for Mr. Boshell?
"A. Patients with a chronic lung disease require — they need to maintain their stamina. They need to have a regular exercise program, including walking and exposure to a calm environment with fresh air.
"Q. Doctor, do you have any other history in this case?
"A. I recall Mr. Boshell discussed with me one reason he was unable to get out and get his exercise, and also a constant source of anxiety to him, was a continuous noise caused by a transformer near his home. So, I wrote a letter for him to try to see if we could alter that, because I felt it was affecting him physically.
". . . .
"Q. Doctor, in your opinion, what effect, if any, did the noise of any electrical substation near his home have on his condition?
 "MR. JACKSON: We object to the form of that. There was not proper predicate laid for it.
 "MR. WARREN: We feel that it was a proper question to ask at that time; he had already been qualified to the fact that he practiced in Alabama.
 "THE COURT: What is your objection as to predicate?
 "MR. JACKSON: It requires a different setup before that's admissible. It is not predicated upon a reasonable degree of medical certainty as to what effect the noise has on Mr. Boshell.
 "MR. WARREN [the Boshells' counsel]: Judge, I will represent to the Court that at the conclusion of Dr. Flippo's deposition, he said that all the testimony given during the course of the deposition was based on a reasonable degree of medical certainty.
"THE COURT: I will overrule the objection.
"A. Okay, a continuous noise is —
"Q. Excuse me, Doctor. Since there has been an objection, let me see if I can ask a better question.
 Do you have any history of this noise being [emitted] from this substation near his home?
"A. Yes, I do.
"Q. Did that have any effect on his medical condition? *Page 1244 
"MR. JACKSON: Same objection.
"THE COURT: Overrule.
"Q. In your opinion, does it have any effect whatsoever on his medical condition?
"MR. JACKSON: Same objection.
"THE COURT: Overrule.
"A. The continuous noise causes chronic anxiety especially in his case. Pulmonary medications already tend to cause nervousness and anxiety, and so it makes it difficult for him to tolerate this pulmonary medication. And we know that chronic anxiety reduces immunity and makes patients prone to infectious diseases.
"Q. Doctor, do you have an opinion that you can state, based on a reasonable degree of medical certainty as to whether or not the electrical substation near his home is stressful on Mr. Boshell?
 "MR. JACKSON: Judge, we object to that on the ground that he didn't lay the proper predicate in regards to the hypothetical it is necessary for him to say. He doesn't say anything about the noise level or anything like that, and we object to it.
". . . .
"THE COURT: Objection overruled.
"A. I believe it is.
"Q. Doctor, may stress alter or prevent the healing process of the human body?
"A. It definitely can reduce the immunity and make Mr. Boshell more likely to develop a pulmonary infection which would greatly worsen his condition.
"Q. Did the condition generate any stress that would affect the healing process of Mr. Boshell?
 "MR. JACKSON: We object to that on the grounds previously assigned. He doesn't [hypothesize] any facts to Dr. Flippo where he can submit an opinion. He doesn't tell him how loud it is, how soft it is, whatever you have to.
"THE COURT: Objection overruled.
"A. It will indirectly by preventing him from the exercise and exposure to fresh air that we talked about earlier.
". . . .
"Q. Do you have an opinion that you can state, based upon a reasonable degree of medical certainty as to whether or not the fact that Mr. Boshell's home is located near an electrical power station has an effect on his life?
 "MR. JACKSON: We object and assign as grounds that there was no predicate laid for the opinion to be based upon knowing how loud it is.
"THE COURT: Overruled.
"A. It does indirectly in that, like I said, it can reduce his immunity and make him more likely to develop an infection. In his situation, he would not tolerate a pulmonary infection very well, and [such an infection] could well be the cause of his death."
Reviewing Dr. Flippo's testimony, we conclude that Dr. Flippo's opinion regarding the effect of the transformer noise upon Mr. Boshell's medical problems was based on personal knowledge of the history of Mr. Boshell's medical problems and upon statements related to Dr. Flippo by Mr. Boshell. See, C. Gamble, McElroy's Alabama Evidence, § 110.01(1) (4th ed. 1991). The trial court did not err in allowing Dr. Flippo to testify as an expert witness.
Drummond Company further argues that it was prejudiced by statements made by a member of the venire during voir dire examination of prospective jurors and that the trial court erred, therefore, in refusing to grant Drummond Company's motion for a new trial. During the voir dire examination, the following colloquy transpired when a prospective juror was questioned about his knowledge of transformers:
 "MR. KING: Is it your recollection from your own personal experience that transformers do make sounds?
 "JUROR BROTHERS: I am familiar from the times when I worked with TASP Security, I worked in . . . Townley and Sayre and different places. I know it is if you are a security guard listening to all that noise. In my opinion —
 "THE COURT: What are you about to give us your opinion of? *Page 1245 
"JUROR BROTHERS: About the box, the transformer.
 "THE COURT: Sir, just a moment. I don't think your giving us your opinion of it is what we need.
 "JUROR BROTHERS: I am just speaking of the security guard work.
 "THE COURT: I don't think you need to be giving us an opinion of it if you are not a witness in this case, okay?
 "MR. KING: Mr. Brothers, when I asked you the question in qualifying you as a juror, is there anything about your knowledge of transformers or about your knowledge of this particular one up in Townley that would cause you . . . somehow to be biased in favor of the Drummond Company or against the Drummond Company or biased in favor of the Boshells or against the Boshells so that you couldn't be fair in . . . this case?
 "JUROR BROTHERS: Well, like I say, as far as favoring Drummond, I have worked for Drummond as security guard around the transformer, and being a security guard, we had to work around them, and I understand the effect on him just being there. And it's very loud and it's very bad on your health and I can understand how it is on this man's health."
Drummond Company objected to the response of this prospective juror and moved for a mistrial; after a lengthy discussion on that motion, which was held out of the presence of the jury, the trial court denied the motion for mistrial. "The proper inquiry on a motion for a new trial based on improper or nonexistent responses to voir dire questions is whether the response, or the lack of response, resulted in probable prejudice to the movant." Union Mortgage Co. v. Barlow,595 So.2d 1335, 1342 (Ala. 1992), cert. denied, ___ U.S. ___,113 S.Ct. 301, 121 L.Ed.2d 224 (1992).
Reviewing the prospective juror's response, we cannot say that Drummond Company was probably prejudiced. Accordingly, we conclude that the trial court did not err in refusing to grant Drummond Company a new trial on this ground.
Drummond Company's final argument is that the trial court erred in refusing to grant its motion for a new trial on the ground that the verdict was excessive and the result of bias, passion, or prejudice on the part of the jury. After carefully reviewing the record, however, we conclude that the jury's verdict is clearly supported by the evidence. The Boshells presented evidence that they both suffer from the noise emitted by the transformer, and there was evidence that the Boshells have suffered mentally. Moreover, Mr. Boshell testified that, in his opinion, the Boshells' property had been worth $50,000, but that because of the noise emitted by the transformer, he did not think he could sell the property. Based on the evidence, we conclude that the jury award was not excessive.
The trial court's judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL and INGRAM, JJ., concur.