Austen L. Bennett III, M.D. and Cardio-Thoracic Surgeons, P.C., appeal from the denial of their motion for a new trial. On September 14, 1993, Walter D. Brewer filed an action in Jefferson County against Dr. Bennett and Cardio-Thoracic Surgeons, alleging that Dr. Bennett had negligently performed a heart bypass operation on Brewer.[1] On December 6, 1993, Brewer died, from causes unrelated to his heart bypass surgery, and his son, Ronald C. Brewer, as administrator of his father's estate, was substituted as the plaintiff in this proceeding. See Rule 25, Ala.R.Civ.P.
The case proceeded to trial, and the jury returned a $250,000 verdict against Dr. Bennett and Cardio-Thoracic Surgeons. The defendants filed a motion for a JNOV, or, in the alternative a new trial, alleging, among other things, that the plaintiff's counsel had improperly injected the wealth of Dr. Bennett into the closing arguments. The court denied the motion. Dr. Bennett and Cardio-Thoracic Surgeons have raised eight issues on appeal; however, because the first issue requires a reversal of the judgment, we pretermit any discussion of the remaining issues.
Specific facts regarding the alleged malpractice are unnecessary for a resolution of the issue; thus, we include only a brief summary of the facts. At the conclusion of Mr. Brewer's triple bypass surgery, Dr. Bennett placed four chest tubes into the chest cavity in order to drain any blood that might accumulate in the chest cavity after the operation. While placing one of the drainage tubes, Dr. Bennett perforated Mr. Brewer's transverse colon. As a result of this perforation, Mr. Brewer suffered complications that lengthened his hospital stay and increased his medical expenses. Specifically, Mr. Brewer suffered peritonitis and subsequently had to have a colostomy.
Dr. Bennett and Cardio-Thoracic Surgeons contend that on four occasions Mr. Brewer's counsel improperly injected the wealth of Dr. Bennett into his closing argument. It is well settled that it "is highly prejudicial to a defendant for the jury to be improperly informed as to wealth of the defendant or poverty of the plaintiff." Liberty National Life Insurance Co. v.Kendrick, 282 Ala. 227, 230, 210 So.2d 701, 703 (1968). The defendants claim that the following statements made by Mr. Brewer's counsel during his closing argument were so prejudicial and highly improper that a reversal is due:
 "He [the plaintiff's expert witness] turns down, as he told you, five out of six cases without getting a dime. You know, somebody calls him and says, 'Here's what happened, Dr. Mills. Does this appear to be medical malpractice?' Five out of six times he says, 'No,' when it appears that — This is something that should be considered, after considering a third of those when he could get more money. He doesn't even consider them. You know, but they say, 'Well, over 10 years, he's made $600,000.' You know, what does a heart surgeon make? $600,000 in one year probably. And by the way —
 "Mr. Bates [defense counsel]: I object to that, Your Honor. That's irrelevant and prejudicial and [I] move to exclude. *Page 450 
 "The Court: Well, I think that Mr. Teel [plaintiff's counsel] had made it clear that the only purpose for that is in response to the question about the fees for his expert witness; is that correct?
"Mr. Teel: Yes, sir.
 "The Court: All right. Other than in that context you shall not consider that part of the argument. Go ahead sir."
At a later point in his argument, Mr. Teel made the following comments:
 "He [the plaintiff] ain't living over in — this man lives in a mobile home. He's not over in Mountain Brook, you know. And I'm proud for somebody that makes the money to live in Mountain Brook.
 "Mr. Bates: Your Honor, I'm going to object, Your Honor. And I move for a mistrial.
 "The Court: Yeah, that's not relevant to the issue in this case, and I will instruct the jury not [to] consider where the parties live as being anything relevant to your consideration.
"Mr. Bates: Your Honor, I move for a mistrial.
"The Court: Overruled.
 "Mr. Teel: Thank you, Your Honor. You know, I am proud for someone that's able to achieve a great education, to be able to make tremendous money.
 "Mr. Bates: Your Honor, I object and I move for a mistrial again. That's improper, it's prejudicial, and its improper argument.
 "The Court: All right. I sustain objection and instruct the jury that this is not anything to be considered by you. You are to decide the case based solely on the evidence in the case. And I will instruct you, Mr. Teel, to move on to another part of your argument.
 "Mr. Bates: Is it — Your Honor, did you rule for a mistrial?
"The Court: Overruled; overruled."
Shortly thereafter, Mr. Teel made the following statement:
 "And what is character? You know, a Mercedes-Benz is not character.
 "Mr. Bates: Your Honor, I'm going to object to that and move again for a mistrial.
 "The Court: That's irrelevant to the issue before the jury as to what kind of vehicle anybody may or may not drive. There is no evidence of that and I will instruct the jury to disregard it."
The defendants further contend that the actions by the court did not, and could not, eradicate the effect of the comments from the minds of the jury. This Court has held that the standard of review regarding the propriety of a closing argument is as follows:
 "In a case of improper argument where the trial judge overrules objection and fails to instruct the jury as to the impropriety with direction to disregard, the test upon appeal is not that the argument did unlawfully influence the jury but whether it might have done so. Williams v. City of Anniston, 257 Ala. 191, 58 So.2d 115 [(1952)].
 "In a case where objection to improper argument is made and sustained, with immediate and strong action by the trial court instructing the jury that such argument was not correct and admonishing them not to consider it, the test on motion for new trial and on appeal is whether the argument was so harmful and prejudicial that its influence was not or could not be eradicated by the action of the court. McLemore v. International Union, etc., 264 Ala. 538, 88 So.2d 170 [(1956)]."
Otis Elevator Co. v. Stallworth, 474 So.2d 82, 84 (Ala. 1985), quoting Estis Trucking Co. v. Hammond, 387 So.2d 768, 771-72
(Ala. 1980) (emphasis in Estis). This Court also stated in OtisElevator that "[i]n determining whether counsel's argument is improper, this Court must consider the evidence, the argument itself, the prejudicial effect of that argument and corrective actions of the court." 474 So.2d at 83, citing Estis TruckingCo. v. Hammond, supra.
In Otis Elevator this Court reversed a judgment based on a verdict for the plaintiff, stating that the following remarks were improper and highly prejudicial:
 "Mr. Lakeman [an Otis Elevator serviceman] is not going to have to pay this *Page 451 
judgment. Otis is. The same company that can afford to hire Mr. McAuley, the man from New York."
474 So.2d at 83. The Court reasoned that the language used by the plaintiff's attorney implied that if Otis could afford to hire an expert witness from New York then it could afford to pay a judgment. 474 So.2d 82, 84.
In Estis Trucking Co., supra, this Court reversed a judgment on a verdict in favor of the plaintiff, in part because counsel for the plaintiff made several statements in his closing arguments regarding the wealth of the defendants. The first statement was that the defendants "could have afforded" a better photograph of the accident scene. 387 So.2d at 770. Later in the argument, plaintiff's counsel stated that "Mr. Taylor [defense counsel] stated to you that he is from Birmingham, but he's not shocked about this $500,000.00. Ladies and gentlemen, he's not shocked. He deals in these figures every day. He tries lawsuits all over the State of Alabama." 387 So.2d at 771. In both instances, defense counsel objected and moved for a mistrial and plaintiff's counsel withdrew the statements. The court overruled the motions for a mistrial and, after the first objectionable statements, instructed the jury not to consider the statements. 387 So.2d at 770-71. This Court held "that the argument was improper and highly prejudicial and its influence was not eradicated from the mind of the jury by the admonition of the trial court." 387 So.2d at 772.
Moreover, in Allison v. Acton-Etheridge Coal Co., 289 Ala. 443, 268 So.2d 725 (1972), the Court reversed a judgment on a verdict for a defendant because defense counsel had made statements in his closing argument regarding the wealth of the plaintiff. The statements made in Allison were very similar to those made by counsel in the instant case. In closing arguments, defense counsel stated, "It's a great thing, folks, to be a very wealthy man and to be able to go out here and hire two law firms with four lawyers." 289 Ala. at 446,268 So.2d at 727. The trial court sustained an objection to this statement and instructed the jury at that point, and in its general instructions, that arguments of counsel were not evidence and should not be considered. Id. However, the court did not instruct the jury that such arguments were improper, even though plaintiff's counsel had objected on that basis and had requested a curative instruction to that effect. This Court specifically stated that "the [trial] court at no time instructed the jury that the argument . . . was improper, but after sustaining the objection merely told the jury that argument of counsel was not evidence in the case." Allison,289 Ala. at 448, 268 So.2d at 729. This Court held that the trial court's admonition at the time of the objection, along with its general instructions that remarks of counsel were not evidence, were not sufficient to eradicate the influence of the statements from the minds of the jurors. Id. See also,Stallworth v. Holt, 534 So.2d 1063 (Ala. 1988), and Pryor v.Limestone County, 225 Ala. 540, 144 So. 18 (1932).
In the instant case the court overruled defense counsel's objection to the "$600,000" statement, but sustained the other objections and instructed the jury to decide the case based on the evidence and not on arguments of counsel. The court never instructed the jury that the comments in question were improper. Thus, this Court must consider whether the "$600,000" statement might have influenced the jury and whether the influence of the other statements was eradicable from the minds of the jurors.
After carefully "consider[ing] the evidence, the argument itself, the prejudicial effect of the argument, and the corrective actions of the court," we conclude that the statements made by Mr. Brewer's counsel were improper and prejudicial. Otis Elevator, 474 So.2d at 83. Furthermore, we conclude that the cumulative effect of these statements was such that the trial court's corrective action could not eradicate their influence from the minds of the jurors. The statements clearly implied that Dr. Bennett was a wealthy heart surgeon, that he had a "great education," and that he could afford to live in Mountain Brook, while Mr. Brewer drove a dump truck and lived in a mobile home. Such comments are clearly improper and are intended to prejudice a jury against a wealthy defendant. They have no place in our judicial system, *Page 452 
which seeks to ensure fairness and impartiality.
Accordingly, the court erred in denying the defendants' motion for a new trial. The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and KENNEDY and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
[1] Cardio-Thoracic Surgeons is a professional corporation of which Dr. Bennett is a member and through which he practices medicine. Brewer made a claim against Baptist Medical Center in Birmingham, the hospital where the operation took place. The circuit court entered a summary judgment in favor of the hospital, and Brewer did not appeal from that judgment.