MOORE, Judge.
 

 Roy Johnson appeals from a judgment of the Lee Circuit Court awarding L.O. $35,000. We affirm.
 

 On August 13, 2006, Roy Johnson, who co-owned a house with his son, Steven Johnson, and his then daughter-in-law, L.J. (now L.O.),
 
 [1]
 
 who were then contemplating a divorce, signed a document (“the note”) stating the following:
 

 “This letter is to confirm and guarantee payment of $35,000.00 to [L.O.] as her share of the house located at 208 Bridgewater Terrace, Helena, Al. She agrees to sign [an] appropriate deed upon the sale of the house by Steven Johnson and grants to Steven Johnson the right to determine the time and place of the sale. L.O. forfeits any claim or interest in the said house and property and is not liable for any sale of the property that results in financial loss. She forfeits any claim to any financial gain upon the sale of the property. This sum shall be paid upon the completion of the sale or June, 2007 which ever date occurs first.”
 

 L.O. fulfilled her obligations as outlined in the note, but Roy refused to pay her $35,000. Roy claimed that, in addition to the consideration set out in the note, L.O. also agreed to cooperate in trying to get dismissed certain criminal charges L.O. had filed against Steven arising out of a July 4, 2006, incident occurring in Baldwin County (“the Baldwin County incident”). Roy asserted that L.O. had breached that portion of their agreement, thereby relieving him of his duty to pay the $35,000. L.O. denied that she had ever agreed to try to get the charges against Steven dismissed as partial consideration for the note.
 

 Upon Roy’s refusal to pay the $35,000, L.O. filed a civil action against Roy seeking compensatory and punitive damages for his failure to pay the note and for fraud. Roy denied any liability for the note or for fraud. Steven intervened in the action claiming that L.O. had fraudulently failed to disclose the note to him during their divorce proceedings and seeking an equitable share of any proceeds awarded to L.O. in the event L.O. recovered in the action. The case proceeded to a trial by jury, at the close of which the trial court entered a judgment as a matter of law in favor of Roy on L.O.’s fraud claim. The jury thereafter returned a verdict in favor of L.O. and against Roy on her remaining claim and awarded her $35,000; it also returned a verdict in favor of Steven and against L.O. on Steven’s fraud claim and awarded him $1,000. Roy filed a motion for a new trial, which was denied by operation of law,
 
 see
 
 Rule 59.1, Ala. R. Civ. P.; he then timely appealed to this court.
 

 
 *762
 
 The only issues on appeal are whether the trial court erred in failing to sustain Roy’s objection to (1) a question regarding whether Roy had inquired of L.O. how she would afford to live following her divorce from Steven, (2) a statement made in closing argument urging the jury to “send a message” to Roy based on his asserted position of power, (3) a reference in opening statements that Steven had been indicted for raping, sexually abusing, or committing domestic violence against L.O., and (4) a statement that the children of L.O. and Steven had witnessed the Baldwin County incident and had required counseling because of it.
 

 Generally speaking, in order to preserve for appellate review an issue regarding an error in the admission of evidence, an appellant must have made a timely and specific objection to the evidence at trial.
 
 See Baldwin County Elec. Membership Corp. v. City of Fairhope,
 
 999 So.2d 448, 455 (Ala.2008) (in order for appellant to preserve evidentiary error for appellate review, appellant “had to make ‘a timely objection ..., stating the specific ground for objection, if the specific ground was not apparent from the context’ ” (quoting Rule 103, Ala. R. Evid.)). Assuming the allegation of error is reviewable,
 

 “ ‘ “[t]he standard applicable to a review of a trial court’s rulings on the admission of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to admit evidence.” ’
 
 Mock v. Allen,
 
 783 So.2d 828, 835 (Ala.2000)
 
 (quoting Wal-Mart Stores, Inc. v. Thompson,
 
 726 So.2d 651, 655 (Ala.1998)). Despite the latitude afforded the trial court in its evidentiary rulings, a trial court exceeds its discretion where it admits prejudicial evidence that has no
 
 probative value. See Powell v. State,
 
 796 So.2d 404, 419 (Ala.Crim.App.1999),
 
 aff'd,
 
 796 So.2d 434 (Ala.2001).
 

 “ ‘ “The second principle ‘is that a judgement cannot be reversed on appeal for an error [in the improper admission of evidence] unless ... it should appear that the error complained of has probably injuriously affected substantial rights of the parties.’ ” ’
 
 Mock,
 
 783 So.2d at 835 (quoting
 
 Wal-Mart Stores,
 
 726 So.2d at 655, quoting in turn
 
 Atkins v. Lee,
 
 603 So.2d 937, 941 (Ala.1992)). See also Ala. R.App. P. 45. ‘The burden of establishing that an erroneous ruling was prejudicial is on the appellant.’
 
 Preferred Risk Mut. Ins. Co. v. Ryan,
 
 589 So.2d 165, 167 (Ala.1991).”
 

 Middleton v. Lightfoot,
 
 885 So.2d 111, 113—14 (Ala.2003).
 

 During his cross-examination of Roy, L.O.’s attorney asked Roy about a meeting between Roy and L.O. occurring on August 13, 2006. During that meeting, Roy, who L.O. testified had often advised Steven and L.O. on major financial matters, discussed with L.O. the possible terms of a divorce settlement. The parties agree that Roy executed the note as part of that discussion. L.O.’s attorney asked Roy:
 

 “Q: Now, when you were negotiating these terms, did you ever ask [L.O.], ‘[L.O.], what have you got in the bank that you are going to be able to get by on when this divorce is final?’ ”
 

 Roy’s attorney objected, arguing that the question was irrelevant and was aimed at injecting the issue of wealth into the proceedings. L.O.’s attorney replied that he needed to prove why L.O. needed the note, to which the trial court replied, “Well, rephrase it then.” L.O.’s attorney then asked:
 

 “Q: Did you ask [L.O.] when you were doing the negotiations what she
 
 *763
 
 was going to live off after the divorce was over?”
 

 Roy replied that he had previously secured employment for L.O. at which she was earning in excess of $60,000 per year and that she was receiving voluntary child support in the amount of $1,000 per month from Steven.
 

 Citing
 
 Bennett v. Brewer,
 
 682 So.2d 448 (Ala.1996), Roy asserts that wealth of the parties to litigation is “wholly irrelevant and immaterial” and should never be injected into litigation in any way, shape, or form.
 
 Bennett
 
 cannot be read so broadly;
 
 Bennett
 
 does, however, indicate that, in certain circumstances, it is reversible error for a trial court to fail to take strong measures to instruct a jury that it is improper for an attorney to argue the wealth of a defendant as even a partial basis for its verdict. 682 So.2d at 451-52. In
 
 Bennett,
 
 the attorney for the defendant timely and specifically objected to the first and every subsequent mention of the defendant’s wealth during closing argument.
 

 In this case, before the cross-examination of Roy, L.O.’s attorney asked L.O. on direct examination about the August 13, 2006, meeting. One of the questions L.O.’s attorney asked L.O. was: “Now, did you and [Roy] ever discuss how you were going to afford to live after the divorce?” Roy’s attorney did not object to that question. L.O. responded that she and Roy had not discussed how she would live but that they had discussed a way she could “get started.” That “way” included Roy’s providing her the note for her share of the Helena home. Later in her direct examination, L.O. testified that, on August 13, 2006, she did not have “any funds to fall back on other than this promise to pay the $35,000”; that she lived off of $500 per month Steven had provided her before the divorce; and that, after her divorce, all she and her three children had to sustain them was her paycheck. Roy objected to that line of questioning, but only after L.O. had completed her testimony. Although the trial court sustained the objection, Roy did not move to strike the foregoing testimony.
 

 “ ‘[WJhen a question is asked of a witness calling for inadmissible matter, it is mandatory upon the party against whom it is offered to object after the question but before the answer.’ C. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 426.01(3) at 793-94. An objection not made until after a responsive answer is given comes too late.
 
 Williams v. State,
 
 383 So.2d 547, 559 (Ala.Cr.App.1979), aff'd,
 
 Ex parte Williams,
 
 383 So.2d 564 (Ala.), cert. denied,
 
 Williams v. Alabama,
 
 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980).”
 

 Sexton v. State,
 
 529 So.2d 1041, 1051 (Ala.Crim.App.1988). If the response is given too quickly for a timely objection, the objecting party must move to strike or to exclude the answer and must receive an adverse ruling in order to preserve that evidentiary issue for appellate review.
 
 General Motors Corp. v. Johnston,
 
 592 So.2d 1054, 1058 (Ala.1992).
 

 Before Roy’s cross-examination, the record already contained testimony regarding L.O.’s financial status to which Roy had either not objected or had objected too late. That evidence tended to show that L.O. depended on the $35,000 Roy had promised to sustain herself and that evidence injected into the proceedings L.O.’s financial status. The later question to Roy on cross-examination sought to solicit information in the same vein. Roy’s responses actually contradicted L.O.’s testimony to a large degree and tended to disprove her need for the $35,000 in order to survive. For purposes of our review, the point is that any negative evidence the question possibly could have elicited would
 
 *764
 
 have been cumulative of the evidence already in the record. Therefore, whatever error the trial court may have committed in allowing Roy to respond would have been harmless error, which would not warrant a reversal.
 
 See Ex parte Key,
 
 890 So.2d 1056, 1066 (Ala.2003) (stating that, even if the trial court exceeded its discretion in admitting certain testimony, any error was harmless because that testimony was cumulative);
 
 Yeomans v. State,
 
 641 So.2d 1269, 1272 (Ala.Crim.App.1993) (“Testimony that may be apparently inadmissible may be rendered innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred.”). For that reason, we see no grounds for reversing the trial court’s judgment based on its failure to sustain the objection.
 

 In his brief, Roy quotes an excerpt from the closing argument made by L.O.’s attorney in which the attorney stated:
 

 “There [are] a lot of things you will do when you are scared, and a man that powerful telling you what to do — you saw him try to stare me down. It’s time somebody sent him a message that, ‘hey, big boy, you don’t run over us.’ ”
 

 Roy’s attorney immediately objected, but he did so without stating a basis for the objection, and the trial court overruled that objection. Again citing
 
 Bennett,
 
 and also relying on 1
 
 Alabama Pattern Jury Instruction
 
 — Civil 1.12 (2d ed. 1993) (“In arriving at a verdict in this case you must not permit sympathy, prejudice or emotion to influence you.”), Roy argues that it is prejudicial to introduce into evidence the social status of the litigants to play on the prejudice or sympathy of the jurors.
 

 Because the statements of counsel during closing argument are not evidence,
 
 see Whitt v. State,
 
 370 So.2d 736, 739 (Ala.1979), we construe Roy’s argument as a claim that he has been prejudiced by an improper closing argument.
 

 “It is well recognized in Alabama that ‘the trial judge in his discretion has control of arguments of counsel and this reviewing court will not interfere with that discretion except in cases of abuse.’
 
 Dendy v. Eagle Motor Lines, Inc.,
 
 292 Ala. 99, 102, 289 So.2d 603, 606 (1974).”
 

 Ashbee v. Brock,
 
 510 So.2d 214, 216 (Ala.1987).
 

 The entirety of the excerpt quoted by Roy reads as follows:
 

 “[L.O.’s counsel]: There [are] a lot of things you will do when you are scared, and a man that powerful telling you what to do — you saw him try to stare me down. It’s time somebody sent him a message that, ‘hey, big boy, you don’t run over us.’
 

 “[Roy’s counsel]: Your Honor, I object to that.
 

 “[Trial court]: Overruled. Go ahead. “[L.O.’s counsel]: ‘You don’t run us. You don’t run everybody. You signed a four corner agreement. Then stick to it.’ ”
 

 It appears from the full excerpt that the “message” L.O.’s attorney urged the jury to send to Roy was that his contractual agreement must be honored regardless of his social status, which is consistent with Alabama law.
 
 See Drummond Co. v. Boshell,
 
 641 So.2d 1240, 1242 (Ala.1994) (quoting trial court’s remark recognizing all persons are equal under the eyes of the law). In fact, Roy has not provided this court any legal authority precluding an attorney from mentioning the social status of a litigant, as opposed to his or her wealth, in closing arguments.
 
 See
 
 Rule 28, Ala. R.App. P.;
 
 see also Boshell, supra
 
 (in nuisance action, plaintiffs attorney’s comment during closing argument comparing plaintiffs to David and defendant to Goli
 
 *765
 
 ath held not to refer improperly to comparative wealth of litigants).
 

 At any rate, the trial court instructed the jury that it was not to consider the arguments of the attorneys as evidence in the case and that the jury was to decide the case on the facts without allowing prejudice, emotion, or sympathy to influence its verdict. The jury, in fact, returned a verdict in favor of L.O. for the exact amount of the note. Elsewhere in the closing argument, L.O.’s attorney actually requested that interest in the amount of $4,000 be added to the $35,000, but the jury declined to award that sum. Roy does not suggest on appeal that the verdict or the amount of the damages awarded is unsupported by the evidence. Unless the trial court exceeds its discretion in controlling closing arguments to the substantial prejudice of an appellant, this court will not interfere with its ruling.
 
 See Breland v. Ford,
 
 693 So.2d 393, 398 (Ala.1996). Because Roy has not shown that substantial prejudice resulted from the attorney’s remark, we have no grounds for reversing the trial court’s judgment based on the remark.
 

 Roy next claims that the trial court erroneously allowed L.O.’s attorney to reveal to the jury during his opening statement that Steven had been indicted for rape, sexual abuse, or domestic violence arising out of the Baldwin County incident. Before trial, Steven filed a motion in limine to prevent L.O. from presenting evidence of the specific allegations underlying Steven’s arrest and indictment. After L.O.’s attorney stated that he would indicate merely that Steven had been indicted, which led to the August 13, 2006, negotiations between Roy and L.O., the trial court granted the motion and instructed the attorneys to approach the bench if “somebody wants to get into that.” During his opening statement, L.O.’s attorney nevertheless stated:
 

 “[T]he evidence will be when she moved down here, things began to escalate, and in July of '06, there was an incident at a condo in Gulf Shores, Alabama, which Steve was ultimately indicted by the grand jury of Baldwin County for rape and sexual abuse — I am sorry— domestic violence, of this young lady, his wife, and they had been talking divorce, the evidence is going to be, but it was just kind of lagging along.”
 

 Neither Roy nor Steven objected to the statement, moved for a mistrial at that time, asked for any limiting instruction to the jury, or took any other action to cure the alleged violation of the order granting the motion in limine. Roy now asserts on appeal that he was “severely prejudiced” by that statement.
 

 By ordering the parties to first approach the bench before “getting into” the details of the indictment, the trial court did not absolutely prevent the parties from bringing to the jury’s attention the details of the indictment; it merely entered a prohibitive preliminary order.
 
 See
 
 Charles Gamble,
 
 The Motion in Limine; A Pretrial Procedure That Has Come of Age,
 
 33 Ala.L.Rev. 1, 12 (1981). Therefore, when L.O.’s counsel referred to the underlying offenses of which Steven had been indicted, the burden rested on Roy to object to that statement at that time to the extent he deemed it prejudicial to his case in order to preserve that issue for appellate review.
 
 See Crowne Investments, Inc. v. Reid,
 
 740 So.2d 400 (Ala.1999) (holding that grant of a motion in limine does not relieve a moving party of the burden of making a timely and specific objection at the moment evidence made the subject of the motion is introduced at trial);
 
 Bowens v. Southern Ry.,
 
 599 So.2d 588 (Ala.1992) (failure of moving party to object during trial to evi
 
 *766
 
 dence made the subject of a motion in limine preliminarily granted before trial waived appellate review of that evidentiary issue). Because Roy did not object during the opening statement, he cannot now claim that the trial court erred in allowing L.O.’s attorney to refer to the underlying offenses in the indictment.
 

 Finally, Roy argues that the trial court erroneously permitted the jury to hear evidence that L.O. and Steven’s children had been present during the Baldwin County incident and had required counseling thereafter. Just before the testimony at issue, Roy testified nonresponsively to a question that, since L.O. had left Steven, which was in March 2006, Roy had acted in the best interest of L.O. to the detriment of his relationship with Steven. In response to that unsolicited statement, L.O.’s attorney asked Roy a series of questions about how his actions had benefited L.O. During that questioning, L.O.’s attorney asked whether Roy had ever obtained counseling for L.O. “for what had happened in Baldwin County,” to which the trial court sustained an objection. L.O.’s attorney then asked: “What did you do to help her mentally and physically after the incident in July?” Roy’s attorney interposed the same objection, which the trial court overruled. Roy then answered:
 

 ‘Tes. I don’t mind answering. When you start from the time [L.O.] returned, the first thing we did was, we asked [L.O.] could we employ a counselor for the three children, if the events she described happened. She said she could.”
 

 The testimony to which Roy objected did not disclose any details of the Baldwin County incident, and it did not directly indicate that the children were present during the Baldwin County incident, as Roy argues. Moreover, it appears that Roy volunteered that he had offered to provide counseling for the children in response to a question relating solely to L.O. Thus, it was Roy, not L.O., who placed that evidence, with all its reasonable inferences, before the jury. Roy cannot complain of any error he led the trial court to commit.
 
 See Moore v. City of Leeds,
 
 1 So.3d 145, 152 (Ala.Crim.App.2008) (“The doctrine of invited error precludes a defendant from inviting error by his own conduct and then seeking to profit from that alleged error.”);
 
 see also Ex parte King,
 
 643 So.2d 1364, 1366 (Ala.1993) (the doctrine of invited error “provides that a party may not complain of error into which he has led the court”).
 

 To the extent Roy complains that the jury could have inferred more details about the Baldwin County incident from the one counseling question regarding L.O. that the trial court allowed, we note that, in addition to the comments of L.O.’s attorney in his opening statement, at several points early during the trial L.O., without objection, had indicated that Steven had raped her. The admission of any cumulative evidence on that point would have been harmless error.
 
 See Ex parte Key, supra.
 

 Because Roy makes no other arguments, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
 

 PITTMAN, J., concurs in the result, without writing.
 

 [1]
 

 . L.O. divorced Steven and remarried before trial.