IGNACIA HERNANDEZ, Plaintiff v. NATIONWIDE MUTUAL
INSURANCE COMPANY, Defendant

No. COA04-1474

(Filed 19 July 2005)

**Insurance— motor vehicles—non-owned vehicle—would-be purchaser—unfinished sale**

An automobile policy issued to an individual provided coverage for the individual while driving an automobile as a non-owned vehicle in connection with a collision where the individual was in

the midst of an unfinished purchase of the car, because: (1) the individual did not hold legal title to the automobile at the time of the collision, and all cars which are not owned within the meaning of N.C.G.S. § 20-72(b) are insured "non-owned" automobiles except those which are furnished for the regular use of the insured or his relative; and (2) at the time of the accident the automobile was not furnished for the individual's regular use.

Appeal by defendant from judgment entered by Judge Milton F. Fitch, Jr., in the Superior Court in Edgecombe County. Heard in the Court of Appeals 11 May 2005.

*Rountree & Boyette, L.L.P., by Charles S. Rountree, for plaintiff-appellee.*

*Baker, Jones, Daly, Murray, Askew, Carter & Daughtry, P.A., by Ernie K. Murray and Kevin N. Lewis, for defendant-appellant.*

HUDSON, Judge.

On 20 February 2004, plaintiff Ignacia Hernandez filed a complaint against defendant Nationwide Mutual Insurance Company ("Nationwide") asking the court to declare Nationwide's liability to plaintiff in connection with a car collision. Both parties stipulated that there was no issue of material fact and each moved for summary judgment. The court granted summary judgment in favor of plaintiff, and defendant now appeals. As discussed below, we affirm the decision of the trial court.

Cynthia Norris ("Norris") owned an auto insurance policy with Nationwide which covered her family's vehicles. Norris worked at S&J Auto Sales ("S&J"). On Friday, 13 April 2001, Norris took a 1997 Chevrolet Blazer home for a weekend test drive. S&J issued her a temporary permit for the test drive. On Monday, 16 April 2001, Norris returned to S&J and announced her intention to buy the Blazer. During that day, Norris and David Shirley ("Shirley"), her boss at S&J, executed all paperwork needed for the sale and purchase of the Blazer except the transfer of title. Norris and Shirley ran out of time to transfer title, and since Shirley would be out of town on Tuesday, they planned to complete the process on Wednesday, 18 April 2001. During her lunch break on Tuesday, Norris, driving the Blazer, collided with a car in which plaintiff was riding. Plaintiff sued both Norris and S&J for her personal injuries. Nationwide denied coverage. Plaintiff obtained judgment against Norris and S&J; after ex-

haustion of S&J's liability policy, Norris remained indebted for an amount less than $10,000.

Nationwide argues that the court erred in finding coverage under its policy with Norris. We disagree.

This case involves application of the "non-owned vehicle" coverage required by the North Carolina Motor Vehicle Safety and Financial Responsibility Act. N.C. Gen. Stat.§ 20-279.1, *et seq.* (2001). These statutes require that a "policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon [her] by law for damages arising out of the use by [her] of any motor vehicle not owned by [her]. . ." subject to certain limits. N.C. Gen. Stat. § 20-279.21(c) (2001). North Carolina is a strict "title" state with regard to ownership of motor vehicles. N.C. Gen. Stat. § 20-4.01(26) defines an owner as the "person holding the legal title to the vehicle." Because Norris did not hold legal title to the Blazer at the time of the collision, she was not the owner.

"[A]ll cars which are not owned within the meaning of G.S. 20-72(b) are insured 'non-owned' automobiles except those which are furnished for the regular use of the insured or his relative." *Gaddy v. State Farm Mut. Auto. Ins. Co.*, 32 N.C. App. 714, 716, 233 S.E.2d 613, 614 (1977). This Court has stated that:

> [t]he clear import of the provision excluding coverage of another's automobile which is furnished the insured for his 'regular use' is to provide coverage to the insured while engaged in only an infrequent or merely casual use of another's automobile for some quickly achieved purpose but to withhold it where the insured uses the vehicle on a more permanent and reoccurring basis.

*Devine v. Aetna Casualty & Surety Co.*, 19 N.C. App. 198, 206, 198 S.E.2d 471, 477, *cert. denied*, 284 N.C. 253, 200 S.E.2d 653 (1973). Nationwide contends that this regular use exclusion prevents its liability here and that this Court's holding in *Gaddy* compels us to reverse the trial court. However, because we believe *Gaddy* is distinguishable, we decline to follow it here.

In *Gaddy*, the Franklins had paid the entire purchase price and had completed their purchase of a Chevrolet. The title had not been transferred because the seller did not have it. This was not an incomplete transaction, awaiting the seller's delivery of title; the seller in *Gaddy* would never be able to deliver title. This Court thus concluded

that the Chevrolet was "furnished for the regular use of" the Franklins because they had done all they could to acquire and exercise dominion and control over the car. The parties in *Gaddy* were not in the midst of a sale that was not quite completed; they had done everything possible to finalize the transfer of ownership. Thus, although the Franklins were not owners of the Chevrolet under this State's strict title scheme, the car was furnished for their regular use. In contrast, at the time of the collision here, Norris was a would-be purchaser in the midst of an unfinished sale and purchase. She had been given only temporary and limited control and possession of the Blazer; in fact, Norris was operating the Blazer under a temporary permit issued on 13 April by S&J for her test drive. Because at the time of the accident the Blazer was not furnished for Norris' regular use, neither the exclusion nor *Gaddy* applies here. Thus, we conclude that the Nationwide policy does provide coverage for Norris driving the Blazer as a non-owned vehicle.

Affirmed.

Judges HUNTER and GEER concur.